194  581
s194 598
194  581
s200 458
200  461

Ida Markle Hessenbruch and Herman Hessenbruch in right of said Ida Markle Hessenbruch v. John Markle, Alvan Markle, George B. Markle, Ida M. Hessenbruch, Clora Markle, E. P. Wilbur, and W. H. Stroh, and Edgar Twining, Surviving Executors of the Estate of William Lilly, Deceased, Trading as George B. Markle & Co., and George B. Markle, Individually. Appeal of George B. Markle.

*Pleading—Lis pendens—Record.*

A plea of former suit pending must allege that the case is the same, the parties the same, and the rights asserted and the relief prayed for the same; and where the proof of the plea can be ascertained by an inspection of the record the court will determine the question without a reference.

*Lis pendens—Partnership—Equity.*

Where a bill in equity is filed by an assignee of a partnership to secure dividends which had accrued on the interest assigned, and which had been deposited by the partnership in the hands of a stakeholder, a plea of lis pendens will not avail where an inspection of the record of the prior suit shows that the bill filed therein was a complaining and dissatisfied partner's bill, without any averment that the plaintiff in the second suit was dishonestly seeking by a pretended assignment to declare the share and dividends of one of the copartners, and without any prayer for relief against such claim.

*Partnership—Equity—Accrued profits—Accounting.*

Where the interest of a partner has been assigned, and the partnership, after the assignment, and pending the settlement of a dispute as to the ownership of the interest, deposits the accrued dividends in the hands of a stakeholder, the assignee of the interest may maintain a bill in equity to have her right to the dividends judicially declared, and for a decree that the holders of the money be directed to pay the same to her. It is not necessary for her to file a bill against the partners for an account.

Argued Jan. 10, 1900. Appeal, No. 200, Jan. T., 1899, by George B. Markle, from decree of C. P. No. 1, Phila. Co., March Term, 1898, No. 941, on bill in equity. Before GREEN, C. J., MC-COLLUM, MITCHELL, DEAN, FELL, BROWN and MESTREZAT, JJ. Affirmed. McCOLLUM, BROWN and MESTREZAT, JJ., dissent.

Bill in equity to declare the ownership of an interest in a partnership.

BIDDLE, P. J., filed the following opinion:

The complainants allege that:

1. Antecedently to June 23, 1893, George B. Markle, one of the above-named defendants, was a partner in and was the owner of two sixteenths of the firm assets and business belonging to the firm of George B. Markle & Company, which was possessed of collieries, machinery, tools and personal assets of great value, and was engaged in the business of mining and selling coal.

2. The partners in said firm are John Markle, Alvan Markle, George B. Markle, Ida Markle Hessenbruch, Clora Markle, E. P. Wilbur and W. H. Stroh and Edgar Twining, surviving executors of the estate of William Lilly, deceased.

3. On June 23, 1893, or thereabouts, the said George B. Markle borrowed from his sister, Ida Markle Hessenbruch, the sum of $110,000, and gave therefor his promissory notes, as follows:

"$85,000.          PHILADELPHIA, PA., June 23, 1893.

" Sixty days after date, for value received, I promise to pay to the order of Ida Markle Hessenbruch, Eighty-five thousand Dollars, with interest from July 1, 1893.

"GEORGE B. MARKLE."

"$25,000.          PHILADELPHIA, PA., June 23, 1893.

" Sixty days after date, for value received, I promise to pay to the order of Ida Markle Hessenbruch, Twenty-five thousand Dollars, with interest from date.

"GEORGE B. MARKLE."

4. As security for said money thus loaned to him by said sister, the said George B. Markle assigned a moiety of all his interest, estate or property in the partnership estate or property of said G. B. Markle & Company. This assignment was in the words following:

"Know all men, That I, George B. Markle, of Portland, Ore., being indebted to Ida Markle Hessenbruch, of the city of Philadelphia, in the sum of $85,000, with interest from the first day of July, A. D., 1893; and in the sum of $25,000, with interest from this date, in consideration of the same, do hereby assign and transfer to the said Ida Markle Hessenbruch the

one moiety of my estate, interest, or property in the partnership estate or property of G. B. Markle & Company, miners and shippers of coal in Luzerne county, Pennsylvania; and I authorize the said Ida Markle Hessenbruch, at any time after sixty days from this date, if the said debts are not paid with interest, to sell the said property at public sale upon notice given once a week for thirty days in one newspaper published in Hazleton and in one newspaper published in Philadelphia, and at said sale to become the purchaser of the property as fully as if the sale was made to me or at my own instance. The proceeds to be applied to the payment of the debt due by me to her, and any surplus to be paid to me or my assigns, and upon receipt of the purchase money to convey the said interest to the purchaser.

" In witness whereof, I have hereunto set my hand and seal, this twenty-third day of June, A. D., 1893.

" GEORGE B. MARKLE. [Seal]

" Witness present:
  " EDWIN S. DIXON."

The other members of said firm of George B. Markle & Company, as then constituted, consented to said assignment in the following paper:

" JEDDO, July 14, 1893.

" Mrs. Ida Markle Hessenbruch, Miss Clora Markle, care Hermann Hessenbruch, 8 N. 5th St., Philadelphia, Pa.

" Mesdames: We have received notice of the assignment made by George B. Markle under date of June 23, 1893, to you as collateral, to secure his indebtedness, and in so far as such assignment is necessary for your security, we consent thereto, reserving, however, our right to object to any sale of the interest to any outside person, in violation of the provisions of the lessees of the Union Improvement Company and of the Highland Coal Company, or of the articles of Partnership of G. B. Markle & Company.

" Yours truly,
" (Signed)    E. P. WILBUR
" WM. LILLY
" JNO. MARKLE
" ALVAN T. MARKLE."

5. The said George B. Markle failed to pay said notes at maturity, and utterly failed, after such maturity, to pay any portion thereof or interest thereon. The said George B. Markle being thus in default in the payment of said notes, principal and interest, was duly notified by the said Ida Markle Hessenbruch, more than thirty days prior to November 4, 1896, of her intention to sell the moiety of his interest in said partnership estate or property of G. B. Markle & Company, at public sale by Barnes & Lofland, auctioneers, at the Philadelphia Bourse, Fifth street near Market street, Philadelphia, on November 4, 1896, at twelve o'clock noon. Notice of the time and place of said sale was also given antecedently thereto once a week for thirty days in the newspaper published in Hazleton, to wit: in the Hazleton Sentinel, and in the newpaper published in the city of Philadelphia, to wit: in the Public Ledger.

At the said public auction of said interest made on November 4, 1896, at the place and hour aforesaid, George W. Field, acting on behalf of the said Ida Markle Hessenbruch, was the highest bidder and purchased said moiety of said interest for the sum of $50,000. Complainant thereupon, by deed dated and duly acknowledged, on November 9, 1896, duly conveyed the said moiety of the interest of said George B. Markle to said George W. Field, and upon the same day, by deed duly acknowledged, said George W. Field, in pursuance of the trust upon which said deed was made to him, conveyed said interest to said Ida Markle Hessenbruch.

6. The said moiety of interest of said George B. Markle in said estate or property of G. B. Markle & Company, was duly assigned to the said Ida Markle Hessenbruch, absolutely, in November, 1896, for said consideration of $50,000, which was credited upon said promissory notes dated June 25, 1893. The said Ida Markle Hessenbruch thus became entitled to a moiety of said George B. Markle's interest in said estate or property and to an account of the same.

7. Dividends have been declared upon said moiety of interest by said partnership, the amounts of which are not accurately known to the complainants. Demand was duly made upon said partnership to pay over to her her moiety of the dividends declared in favor of said George B. Markle, but in consequence of a notice by the latter the partnership has refused to pay over

said moiety of dividends to her, although payment has been made to the other partners, of the dividends upon their shares.

8. The said George B. Markle has notified the said partners not to recognize the title of the said Ida Markle Hessenbruch in the moiety of his interest, and has warned them not to pay over to her anything on account of his interest, and not to pay over to her any portion of the dividends due upon his share. He has threatened the said partners that if they do pay over anything to the said complainant they will be held responsible to him. In consequence of these threats said partners refuse to recognize the title of the said complainant to said moiety of said interest, and to account to her for her moiety of the dividends and profits declared upon said share and payable to the persons entitled thereto.

Being without an adequate remedy at law, these complainants crave equitable relief, as follows: (*a*) a decree that the said Ida Markle Hessenbruch is entitled to a moiety of all the estate and property of George B. Markle in the partnership and partnership estate and property of G. B. Markle & Company; (*b*) an accounting by the partners composing the firm of G. B. Markle & Company, of all interest, income, profits, and dividends declared upon her share of the assets thereof of said George B. Markle, now payable to her; (*c*) a decree ordering the said firm to pay over to said Ida Markle Hessenbruch a moiety of all income, profits, and dividends heretofore declared upon the share of said George B. Markle in said partnership of G. B. Markle & Company; (*d*) a decree ordering said firm to recognize the said Ida Markle Hessenbruch as the owner of a moiety of the share in said partnership estate and property formerly belonging to George B. Markle, and to pay over to said Ida Markle Hessenbruch from time to time a moiety of all sums of money which may become payable by said partnership, out of its assets or otherwise on account of said share; (*e*) an injunction, special until hearing and perpetual thereafter, restraining and enjoining the said George B. Markle from interfering in any way or manner with the said Ida Markle Hessenbruch in her collection from the said firm of G. B. Markle & Company, of a moiety of the interest and estate formerly belonging to said George B. Markle in the partnership and partnership estate and property of G. B. Markle & Company; (*f*) general relief.

To this bill the respondents make two affirmative defenses, first, that a bill in equity is now pending in the court of common pleas of Luzerne county, sitting in equity, wherein George B. Markle, Alvan Markle and Clora Markle are plaintiffs and all the other above-named defendants, together with Ida Markle Hessenbruch, are defendants, filed September 2, 1895, No. 14, October term, 1895, wherein, as your respondent is informed and believes, the same subject-matter is contested which is sought to be adjusted in this.

In the case of Harrisburg v. Ry. Co., 1 Pa. Dist. Rep. 194, Judge SIMONTON, quoting Cleveland, Painesville and Ashtabula R. R. Co. v. City of Erie, 27 Pa. 380, says, " that where pendency of another case is suggested in court in a proper manner its truth, if denied, is to be immediately ascertained by a master, and if the two bills appear to be brought for the same matter, all proceedings on the last one are immediately stopped. It would seem, however, from this case that it is not necessary to refer the truth of the plea to the master. Where the court can ascertain the fact by an inspection of the records, as that can readily be done here, we shall determine the matter without reference."

After a careful examination of the record in that case, which has been produced before us, we fail to find that it has any bearing upon the present litigation. The object of the present proceeding is to determine the ownership of the two moieties of George B. Markle, interest in the assets of George B. Markle & Company. It is open to the persons found entitled under the present proceedings to said interest to prosecute or abandon these proceedings by proper appearance upon the record of the Luzerne county court. The decree in the present case does not affect that litigation, nor does that litigation have anything to do with the present one. The allegations therefore of lis pendens is not in our opinion established.

The second defense, as stated by Mr. George B. Markle, is that it was verbally agreed before these papers were executed between his sister and himself that he should be entitled to all the income and dividends before the maturity of the notes, and that they should not mature until December, 1897, and that no sale should be made previous to that date.

At the time of the execution of these papers Mr. George B.

Markle was represented by the late Richard C. McMurtrie, and Mrs. Ida Hessenbruch by Mr. Edwin Dixon, both gentlemen, it is scarcely necessary to say, of the highest standing at our bar. Mr. McMurtrie is since deceased, but Mr. Dixon gave his testimony as to the preparation of these papers, as follows:

"Q. Then what was generally done? A. We had several consultations, and finally a paper was drawn, which was executed by Mr. Markle as the final conclusion of all our verbal interviews and discussions. Q. That embodied the result of all your negotiations? A. Yes, sir; everything we had done prior to that. Q. Do you know whether that paper which was finally executed was submitted to Mr. McMurtrie before it was executed? Yes, sir; Mr. McMurtrie was with Mr. Markle in everything that was done. Q. Do you know whether, in the course of the negotiation, anything was said about the clause giving the right to George B. Markle to dividends at the time? A. I think Mr. Markle did say something about a dividend through the transactions, but it was never consented to in any way by me. Q. Then that clause was not inadvertent, but as a result of what was thought out? A. There was nothing inadvertent, nothing done inadvertently in the preparation of that paper. Q. There had been a prior paper which reserved to him the dividends? A. Yes, sir. Q. And this clause did not appear in the 1893 agreement advisedly? A. It was advisedly prepared in the shape it is with the approval of Mr. McMurtrie. Q. Was anything said by you or anything attempted by anybody during the negotiations before the paper was signed, to the effect that there should be no sale before 1897 of George B. Markle's interest? A. No, sir; I think that would have been contrary to the terms of the paper as I remember it. Q. In that respect the paper embodied the terms the parties agreed upon? Yes, sir."

The original paper seems, therefore, to have been executed after mature deliberation and under the advice of eminent counsel. The alleged variation by parol of this instrument depends almost entirely on the testimony of George B. Markle; what is called a corroboration of it, is the testimony of an unmarried sister, who says, in 1894, when her brother was endeavoring to persuade her sister Ida to stay the sale, he said to her she had agreed she would not sell it unless she was forced to it

by creditors ; she seemed to feel very bad, and said she was sorry she had forgotten the agreement. This is the only thing which in any way tended to corroborate the statement of her brother. Both of these parties were flatly contradicted by Ida Hessenbruch and her husband, and to show that this defense was an entire afterthought they produced a letter from George B. Markle of May 24, 1894. He was then trying to stop the sale, and, knowing that her husband was adverse to it, instructed his sister as follows : " Will you make the following statement to Hermann,-if in every material respect you find it correct as you remember the facts? 'On Wednesday last, the 16th instant, I agreed with my brother George to extend his indebtedness to me to September, 1897. I authorized him to draw up new notes and assignment to comply with this agreement made for the extension.' "

It certainly seems extraordinary that a man of great shrewdness and business capacity, who testifies that he was president of three banks, should be begging for an extension of a note which was not due for four and a quarter years. And most certainly it would be a much more forcible argument if he could have asked his sister to tell her husband that she had agreed at the time the notes were originally executed that they were to be payable not at sixty days, but after four years, and not that that agreement bore date May 16, 1894.

Mr. Markle has given no satisfactory explanation why at the time of the execution of the paper they should direct their counsel to draw them in direct contradiction of their agreement.

Mr. Justice STERRETT in Rowand v. Finney, 96 Pa. 196, quotes what has been said by Mr. Justice WILLIAMS in Martin v. Berens, 67 Pa. 459: " Where parties without any fraud or mistake have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only evidence of their agreement, and we are not disposed to relax the rule. It has been found to be a wholesome one, and now that parties are allowed to testify in their own behalf, the necessity of adhering to it strictly is all the more imperative." He also adds : " It is only on the ground of fraud, accident or mistake in the procurement of a written instrument or fraudulent use of it afterward that a chancellor will lend his aid to a party who seeks to avoid the legitimate operation of such an instru-

ment, and while parol evidence is admissible to prove the alleged fraud, accident or mistake, the evidence, as was held in the case above cited, should always be clear, precise and indisputable. If courts do not strictly enforce the rule, and at the same time exercise the power with which they are vested in such cases, the security afforded by deeds and other written instruments, as evidence of title and business transactions between men, will be most seriously impaired."

So far from the evidence in this case being clear, precise and indisputable that any parol agreement was made to vary the written contract, the fact and inference in the case tends to produce the opposite result. We think, therefore, the equity relief here prayed for should be granted.

The court entered the following decree:

And now, December 19, 1898, all the demurrers heretofore filed having been by it overruled, this cause having come on to be heard by the court in banc, upon bill, answers, interpleaders or cross bill, proofs, adjudications, and exceptions thereto, it is ordered and decreed as follows:

1. All the exceptions filed by the defendants are dismissed.

2. The adjudication, including its findings of fact and conclusions of law, heretofore filed, is confirmed.

3. All the prayers for relief filed in the cross bill and interpleader, saving to such extent as relief has been granted to Clora Markle in the decree heretofore filed, directing the payment to her by the firm of George B. Markle & Company of the sums of money therein specified, are refused.

4. It is decreed that Ida Markle Hessenbruch is entitled absolutely, in her own right, free of all trusts or duties of accounting, to a moiety of all the estate, property and interest of George B. Markle, being two sixteenths in the partnership and partnership estate and property of George B. Markle & Company.

5. It appearing that between the 7th day of October, 1894, and the 1st day of July, 1898, inclusive, the firm of George B. Markle & Company declared and set apart certain sums of money as the earnings due on the two-sixteenths interest in the firm, which interest stood on the books of the company in the name of George B. Markle, and that Ida Markle Hessenbruch is entitled to one half of said sum, and that the same is deposited with Drexel & Company in Philadelphia, drawing

interest at the rate of two per centum per annum, it is ordered, adjudged and decreed that the firm of George B. Markle & Company forthwith pay to Ida Markle Hessenbruch the sum of $53,687.50, with the interest accrued on the several sums owing by said Drexel & Company.

6. It is decreed that the said firm of George B. Markle & Company pay over to said Ida Markle Hessenbruch, in addition to a moiety of the money deposited with Drexel & Company as particularized in the fifth paragraph, a moiety of all income, profits and dividends heretofore declared and not actually paid over, upon the share of George B. Markle in the partnership of George B. Markle & Company.

7. It is decreed that the said firm of George B. Markle & Company do recognize Ida Markle Hessenbruch as the owner of a moiety of the two-sixteenths share in said partnership estate and property of George B. Markle & Company, formerly belonging to George B. Markle, and do pay over to said Ida Markle Hessenbruch, from time to time, a moiety of all sums of money which have become payable by said partnership, or which may become payable by said partnership, on account of said share, out of its assets, or otherwise.

8. It is decreed that a perpetual injunction forthwith issue restraining and enjoining George B. Markle from interfering in any way or manner with the said Ida Markle Hessenbruch in her collection from the firm of George B. Markle & Company of a moiety in the two-sixteenths interest formerly belonging to said George B. Markle in the partnership and partnership estate and property of George B. Markle & Company, and from interfering with the said Ida Markle Hessenbruch in any way in the enjoyment of her moiety of said two-sixteenths interest, formerly belonging to the said George B. Markle in said firm.

*Error assigned* among others was the decree of the court.

*J. Q. Creveling* and *James Scarlet,* with them *George L. Crawford,* for appellant.—The plea of lis pendens should have been sustained: Watson v. Jones, 13 Wall. 679; Harrisburg v. Ry. Co., 1 Pa. Dist. Rep. 194; Bussier v. Weekey, 11 Pa. Superior Ct. 463; Clarke's App., 107 Pa. 436.

If no accounting of the whole net profits of the firm is nec-

essary, and appellee merely seeks to take the deposit in Drexel & Company's bank, a fund belonging to George B. Markle, exclusively, her remedy is at law and not in equity. A judgment on her notes and an attachment execution, would be a complete remedy at law.

*John G. Johnson*, for appellees.

*Samuel Dickson*, for G. B. Markle & Company.

OPINION BY MR. JUSTICE DEAN, February 12, 1900:

George B. Markle was indebted to his sister, Ida M. Hessenbruch, in the amount of two notes, aggregating the sum of $110,000, the notes being dated June 23, 1893, payable in sixty days, with interest from July 1, 1893. On the same day, as collateral security for the debt, he delivered to his sister an assignment of one moiety of his interest in the partnership of C. B. Markle & Company, miners and shippers of coal in Luzerne county, with power to Mrs. Hessenbruch to sell said interest at public sale if default was made in payment of the notes at maturity. George B. Markle paid neither principal nor interest on the notes up to November 4, 1893, when in the exercise of the power conferred upon her by the written assignment, after thirty days' notice of her intention so to do, Mrs. Hessenbruch sold the collateral at public sale, and herself, indirectly, became the purchaser on a bid of $50,000. The other moiety of his interest had been assigned to Clora Markle, another sister, as security for a debt he owed to her. During the existence, previous to the assignment to Mrs. Hessenbruch, of the firm of George B. Markle & Company many dividends, payable to the partners, according to their respective interests, had been declared; that, on the George B. Markle interest had always been paid to him. After the assignment, the declared dividends upon his whole share, from October 7, 1894, to July 1, 1898, amounted to $107,375. Of this sum, each sister had drawn $10,937.50, leaving unpaid $85,500, one half of which, $42,750, belonged to each. George B. Markle set up, in hostility to his sister, Mrs. Hessenbruch, a claim to this money, and notified the partnership not to pay to her. Clora Markle asserted a right, not only to her own moiety, but to the one claimed by Mrs. Hessenbruch; she relied on cer-

tain assignments of his whole interest to to her by the brother, George, made June 5, 1896, and October 25, 1897. To avoid peril of mispayment, the partnership deposited the whole of the balance of the dividend, $85,500, with Drexel & Company, responsible bankers of Philadelphia, to be held by them until the disputed ownership of the dividends on George's share was settled, either amicably or judicially. Mrs. Hessenbruch then filed this bill against defendants, setting out, more at length, substantially the facts as narrated, and praying that she be declared the owner of a moiety of George's interest, and as such owner, that her right to receive the dividends on such moiety be judicially declared, and that the holders of the money be directed to pay the same to her.

The answer and cross-bill of Clora Markle, in substance, averred a parol agreement between Mrs. Hessenbruch and her brother which induced the written one, by which parol agreement, Mrs. Hessenbruch promised that her brother should retain the right to receive all dividends declared on his share, and that she would not exercise her power to sell prior to September 1, 1897, without the consent of the brother; that as he had not given his consent the dividends on the whole share under the subsequent assignments had passed to her.

The answer of the firm and remaining partners is, that dividends had been declared out of profits from time to time, and paid over to all the partners except on George B. Markle's interest; but that dividends declared and payable on this last share had not been paid over, because of a controversy between Mrs. Hessenbruch and her brother as to the right thereto, and that the company is ready and willing to pay the same whenever this controversy is judicially settled.

The answer of George B. Markle, in substance, makes the same statements as that of Clora Markle, though much more in detail. His defense, on the merits, is practically set out in the sixth paragraph of his answer, thus:

" 6. I deny that any dividends due and set apart to me upon the books of the said firm at the time of said sale passed by virtue thereof to the complainant as purchaser of said interest. . . . . I deny that by virtue of said sale the said Ida Markle Hessenbruch became and is entitled to any accounting for said interest up to the time of said sale, or since, and aver that any

accounting of my interest therein vested in Clora Markle, under and by virtue of the several assignments to her, and especially under the assignment of June 5, 1896, before referred to."

He further averred that a bill in equity, prior to the one in this case, had been filed in the court of common pleas of Luzerne county, wherein George B. Alvan and Clora Markle were plaintiffs, and the other parties named as defendants in this case, including Mrs. Hessenbruch, this plaintiff, were named as defendants, wherein the same subject matter is contested which is sought to be determined by this bill, and that the issue is now pending for decision in that court, and that therefore, this complaint should be dismissed.

The issue as thus made up came on for trial in the court below; there was a patient and prolonged hearing, and a large volume of testimony taken. The learned trial judge, on both facts and law, found in favor of plaintiff. We shall not concern ourselves with a discussion of the contradictory evidence; a careful examination of it fails to satisfy us that there is any manifest error in the findings; on the contrary, we believe they are fully warranted and are right.

As to the averment of lis pendens in the answer of George B. Markle, in this case, it is purely a question of law determinable from an inspection of the records in the two causes. In equity, often, perhaps generally, it is a question of fact referable to a master to take testimony and report: but here, nothing dehors the records would shed light on the question. It is not doubted that a plea of lis pendens is a good plea in abatement to a bill in equity, but the authorities are not altogether in accord as to what is requisite to sustain the plea; a clear statement of what must be shown is given in Harrisburg v. Harrisburg City Passenger Ry., 1 Pa. Dist. Rep. 192: "A plea of former suit pending must allege that the case is the same, the parties the same, and the rights asserted and the relief prayed for the same; and where the truth of the plea can be ascertained by an inspection of the record, the court will determine the question without a reference." This is but a concise summary of the weight of authority on the subject. Let us determine the availability of the plea to these defendants by the test thus laid down. The bill in Luzerne county was filed August 28, 1895; the one before us, May 24, 1898; the parties plaintiff in the

Luzerne bill are George B. Markle, Alvan Markle and Clora Markle; the defendants, E. P. Wilbur, the executors of William Lilly, deceased, John Markle, Ida Hessenbruch and Herman Hessenbruch. Although not the same plaintiffs and defendants, the same persons are embraced in both bills; we may, therefore, with perhaps some liberality of construction, assume that the parties are the same. But, is the case the same? This must be ascertained by comparing the averments of the two bills. The first paragraph in the Luzerne bill avers and sets out the articles of copartnership; the second, the death of William Lilly, and the substitution of his executers as representatives of his interest; the third, that E. P. Wilbur had parted with all his interest, yet continued to act as a partner and meddle with the business at the request of the remaining defendants; fourth, that Wilbur fraudulently and maliciously conspired with the other defendants to exclude the plaintiffs from any part or lot in the management; fifth, that John Markle, at the formation of the partnership, as a condition to being appointed manager, agreed he would cease to act if his management did not prove satisfactory to all of the partners, yet in violation of his agreement he persisted, against the protest of plaintiffs, in holding on to his appointment; sixth, avers in elaborate specifications his dishonesty, extravagance and general mismanagement; seventh, that still greater extravagance is contemplated in the future; eighth, because of valuable continuing leases, not assignable, irreparable loss would result if the partnership were dissolved; ninth, a general averment of conspiracy to exclude plaintiffs from any share in the management. Next, notice the prayers for relief: First, that Wilbur be restrained from taking any part in the management; second and third, that all of defendants be restrained from excluding plaintiffs from taking part in the management, and John Markle from acting as manager to their exclusion; fourth, that defendants and all their employees be restrained from making new and extravagant improvements; fifth, that they be restained from paying out dividends without consent of plaintiffs. The remaining prayers, from sixth to tenth, inclusive, ask that defendants and the manager be directed to account for cost of improvements, coal sold, expense of mining and salaries; the eleventh and twelfth are for appointment of master and general relief.

When we consider the averments of Mrs. Hessenbruch's bill and the answers thereto, heretofore noticed, not one of them touches the subject in controversy in the Luzerne bill; the latter is a complaining and dissatisfied partner's bill; it is not even hinted that one of defendants, Mrs. Hessenbruch, dishonestly seeks, by a pretended assignment, to claim the share and dividends of one of her copartners; nor, is there any prayer for relief against such claim. Nor does the answer of Mrs. Hessenbruch raise any question which can move the Luzerne court to inquire into the controversy raised by the issue now before us. True, in the third paragraph of her answer she asserts that George B. Markle has assigned a moiety of his interest to her, but she asserts this, not as a defense, but by way of explanation of her weight of interest in the partnership. Mrs. Hessenbruch's bill raises no question as to the honesty of John Markle, or management of the business. She avers that dividends have been declared, have been set apart and deposited with a stakeholder for the proper owner of George's share; she asks for no accounting; as to whether too much or too little she makes no suggestion; even George does not aver in his answer that at least this amount of money deposited is not payable to the real owner of his interest; he only avers that he is still the owner. We are of opinion, with the court below, that the cases are not the same; that the rights asserted and the relief prayed for are not the same; therefore, that the plea of a former action pending is not sustained.

The argument of the learned counsel for appellant, that all that passed by the assignment to Mrs. Hessenbruch was a mere right to an account, an intangible thing, which she must assert by bill against the partners for an account, is without merit. Such a plea, if sound, could only be raised by the partnership; if the assignment was good, as the court below has found, George B. Markle has no further interest in the moiety assigned; how his assignee shall enforce her right under the assignment, if the partnership denies it, is no concern of his. The partnership acknowledges it, and is ready to pay the dividends declared upon it to the proper owner; indeed, under the first paragraph of the partnership agreement, they could not well do otherwise.

The appeal is dismissed at costs of appellant, and the decree of the court below is affirmed.

MESTREZAT, J., dissenting:

We cannot assent to the decision of the majority of the Court. The court below should be reversed, and the bill be dismissed on the plea of lis pendens. Both bills involve the same subject-matter, and are between the same parties. The bill in Luzerne county was filed August 28, 1895, and averred the partnership, the names and respective interests of the partners—alleging George B. Markle's interest to be the four thirty-seconds and Ida M. Hessenbruch's to be the one thirty-second, the misman-agement of the business of the firm by the defendants and a conspiracy to exclude the plaintiffs from participating in the management thereof; and prayed, inter alia, "that said defend-ants be compelled to render to your orators a true account of the net profits of the said firm from all sources from January 1, 1890, to this date, and to pay your orators their share of the same." The answer of Mrs. Hessenbruch set forth, inter alia, that George B. Markle had assigned his interest in the firm to herself and sister, to secure his indebtedness to them, and that he had little, if any, interest in the business. It contained the usual prayer that respondent might be dismissed with costs.

About three years after the bill was filed in Luzerne county to wit: on May 24, 1898, and while the same was pending and undisposed of, Mrs. Hessenbruch filed this bill. It sets forth the names of the partners composing the firm of George B. Markle & Co., avers, inter alia, that, antecedently to June 23, 1893, George B. Markle was a partner in and owner of the two sixteenths of the assets and business of said firm, that the plain-tiff had purchased and was the owner, at the time of filing the bill, of one moiety of George B. Markle's interest in the estate and property of the firm and "thus became entitled to an ac-count of the same;" that dividends had been declared upon said moiety of interest, but, in consequence of a notice from George B. Markle, the partnership refused to pay them to her, and that George B. Markle denied the plaintiff's right to a moiety of his interest in said partnership, and the partnership refused to rec-ognize the same. The prayers for relief are, inter alia: (*a*) a decree that the plaintiff is entitled to a moiety of all the estate

and property of George B. Markle in the partnership and partnership estate and property of George B. Markle & Co.; (*b*) an accounting by the partners of all interest, income, profits and dividends, declared upon her share of the assets thereof of said George B. Markle, now payable to her; (*c*) a decree ordering the firm to pay over to her a moiety of all incomes, profits and dividends heretofore declared upon the share of George B. Markle in the partnership; and (*d*) a decree ordering said firm to recognize her as the owner of a moiety of the share in the partnership estate and property formerly belonging to George B. Markle, and to pay over to her a moiety of all sums of money which may become payable by said partnership out of its assets or otherwise on account of said share. The answer of George B. Markle denied that Mrs. Hessenbruch was the owner of a moiety of his interest in the partnership or was entitled to any share of the dividends due and set apart for him by the partnership, and averred the pendency of a bill in the court of common pleas of Luzerne county, wherein the parties and subject-matter contested here are the same, and denying the right of the plaintiff to the accounting prayed for.

It is true that the bill in Luzerne county is more comprehensive than this bill, but the same subject-matter is involved in both, and part of the relief prayed for is the same. It is conceded that the parties are the same and both bills pray for an accounting of the profits of the firm and a decree of payment to the plaintiff of his share therein.

The bill in Luzerne county necessarily raises the question of the ownership of George B. Markle's interest in the business of the firm. The issues there raised cannot be determined without ascertaining what his past and present interest in the firm is, and what part of the dividends declared by the partnership are due him. As Mrs. Hessenbruch, the plaintiff here, is a party to that bill, she can and must set up and demand in that proceeding her interest in George B. Markle's share of the partnership assets, and have her rights thereto adjudicated. A decree in that suit will conclude George B. Markle and Mrs. Hessenbruch as to the ownership of his interest in the firm, and to any dividends declared thereon by the partnership.

It is, therefore, clear that in both bills " the case is the same, the parties the same, and the rights asserted and the relief

prayed for the same." The plea of lis pendens is good, and the bill should be dismissed.

J. HAY BROWN and J. BREWSTER McCOLLUM, JJ., concur in the dissent from the decree of the majority of the Court.