## Gray Brothers Inc. v. Harleysville Insurance Co.

*Edward Rubin,* for plaintiffs.
*Robert H. Fiebach* and *Barry Klayman,* for defendants Cadmus et al.

*Nate D'Amico* and *Alexander Kerr*, for defendant Harleysville.

VOGEL, *P.J.*, June 8, 1987—This opinion is written in conjunction with our disposition of preliminary objections to plaintiffs' second amended complaint. Upon careful review of the record, and after consideration of the arguments ably set forth in the briefs of counsel and at oral argument on December 30, 1986, we sustain in part the preliminary objections filed by each of the respective defendants.

## ISSUES

The issue raised for our review in connection with the preliminary objections of defendant, Fred T. Cadmus, and the Cadmus law firms is whether Pennsylvania law and public policy considerations bar the assignment of complete control of the conduct and termination of a claim for legal malpractice. This is an issue of first impression in the Commonwealth of Pennsylvania. Based upon the reasoning set forth herein, we conclude that such an assignment is unenforceable under Pennsylvania law and void as against public policy. Accordingly, we sustain defendants' preliminary objections in the nature of a demurrer.

Numerous issues are raised in connection with defendant Harleysville Insurance Company's preliminary objections.[1] Our review of one of those is-

---

1. The following issues were raised in Harleysville's preliminary objections and supporting memorandum of law: (1) whether Harleysville reserved the right to deny coverage under the policy of insurance; (2) whether plaintiffs alleged sufficient facts in support of their claim of "bad faith" on the part of Harleysville; (3) whether the law of this commonwealth

sues convinces us that the preliminary objections must be sustained. That issue, stated simply, is whether the pendency of an action for declaratory relief filed by defendant Harleysville in a neighboring jurisdiction compels the imposition of a stay of proceedings in the matter sub judice. We conclude that the doctrine of lis pendens applies. Accordingly, we sustain Harleysville's preliminary objection in the nature of a petition raising the pendency of a prior action.

## FACTS AND PROCEDURAL HISTORY

The history of this case is complex. It may be summarized as follows.

Plaintiffs, George B. Gray Jr., Dorothy Gray, Robert Gray, and Jean Gray, owned land in Chester County. Plaintiffs, Robert and Marilyn Dietz, and their minor children, Richard, Renee, and Thomas Dietz, owned land located near the Gray family's land. Plaintiff, Gray Brothers Inc., used the Gray family's land for the disposal of waste products. Defendant, Harleysville Insurance Co., issued a policy of motor vehicle liability insurance to Gray Brothers. This policy allegedly covered certain waste disposal activities conducted by Gray Brothers upon the Gray family's land.

In 1980, the Dietz family instituted an action in Chester County against the Gray family and Gray Brothers.[2] In that action, the Dietz family alleged

---

permits the recovery of punitive damages for emotional distress caused by an insurer's "bad faith" conduct; (4) whether a claim for "bad faith" may be assigned; and (5) whether the pendency of a prior action compels the stay or dismissal of the instant action.

2. Robert Dietz and Marilyn Dietz, husband and wife, parents and guardians for Richard Dietz, Renee Dietz, and

that the Gray family and Gray Brothers caused damage to the Dietz family's land as a result of Gray Brother's disposal activities on the Gray family land. The Dietz family also asserted claims for emotional distress and sought punitive damages.[3]

Harleysville undertook the defense of the Dietz action for Gray Brothers subject to a reservation of rights agreement dated November 19, 1979. Defendant Fred T. Cadmus and his law firm were retained by the Gray family to represent them as defendants in the Chester County action. Defendant C. Robert Elicker and his law firm were retained to represent Gray Brothers in the Chester County action.

In February, 1984, a Chester County jury returned a verdict in favor of the Dietz family and against the Gray family and Gray Brothers. The jury awarded compensatory damages of $88,867, and punitive damages in the amount of $210,000 as against the Gray family, and punitive damages in the amount of $490,000 as against Gray Brothers. The Chester County trial judge molded the verdict to include delay damages, thereby bringing the total of the judgments to $818,730.92

Thomas Dietz v. Gray Brothers Inc., George B. Gray, Jr. and Dorothy Gray, husband and wife, Robert and Jean Gray, husband and wife, Commodore MOS Technologies Inc., a/k/a MOS Technologies Inc., additional defendant, 16 January term, 1980, C.P. Chester County.

Commodore MOS Technologies, Inc. was joined as an additional defendant in the Chester County action, apparently by the Gray family and/or Gray Brothers.

3. The Dietz family was represented by Edward Rubin in the original Chester County action instituted against the Gray family and Gray Brothers. We note in passing that Mr. Rubin now represents the Dietz family, the Gray family and Gray Brothers as plaintiffs in the instant Montgomery County action.

In May 1984, Harleysville instituted a declaratory judgment action in the Chester County Court of common Pleas.[4] Named as defendants in the declaratory judgment action were Gray Brothers, the Gray family, and the Dietz family. A review of the complaint filed in the declaratory judgment action reveals that Harleysville sought inter alia, a judicial determination as to the effect of the following exclusion provision of the Gray Brothers — Harleysville Insurance policy:

"This policy *does not apply* to bodily injury or property-damage arising out of the discharge, dispersal, release, or escape of smoke vapors, soot, fumes, acids, alkalines, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or onto land, the atmosphere or any water course or body of water, *but this exclusion does not apply if such discharge, dispersal, release, or escape is sudden and accidental.*" (emphasis supplied).

In sum, Harleysville alleged as follows in its action for declaratory relief: (1) that the insurance policy did not cover the Gray family; (2) that the policy did not insure against personal liability; (3) that the policy excluded coverage for punitive damages; and (4) that the Dietz family has no right to proceed against Harleysville in any manner as a result of the insurance policy.

---

4. No. 84-0383, C.P. Chester County.

We recognize that ordinarily, a court may not take judicial notice in one case of the records of another case, whether in another court or in its own. *Naffah v. City Deposit Bank*, 339 Pa. 157, 13 A.2d 63 (1940); *Gulentz v. Schanno Transportaion Inc.*, 355 Pa. Super. 302, 513 A.2d 440 (1986); *Woolard v. Burton*, 345 Pa. Super. 366, 498 A.2d 445 (1985). However, our appellate courts have held that in situations involving preliminary objections or motions for summary judg-

In their answer and new matter to the declaratory judgment complaint, the Dietz family included the following allegations,[5] all of which relate to Harleysville's conduct of the underlying Chester County action instituted by the Dietz family: (1) that Harleysville failed to conduct good faith settlement negotiations with the Dietzes; (2) that Harleysville failed to advise Gray Brothers of the Dietz family's offer to settle; (3) that Harleysville failed to advise the Gray family and Gray Brothers that they and Harleysville could jointly contribute funds to effect a settlement; (4) that Harleysville's advice to its insured was rendered in bad faith and in a negligent manner; (5) that Harleysville was negligent in its investigation of the Dietz family's claim; (6) that Harleysville failed to advise Gray

---

ment this rule does not apply where the facts are admitted. *Walker v. Ohio River Company,* 428 Pa. 562, 239 A.2d 206 (1968); *Thal v. Krawitz,* 361 Pa. 178, 63 A.2d 33 (1949); *Gulentz,* supra; *Woolard,* supra. In the instant case, plaintiffs have admitted the existence of the pending action for declaratory relief by way of their answer to Harleysville's preliminary objections. Accordingly, we take judicial notice of the pleadings in the pending Chester County action, but only to the extent that they have been provided for our inspection and review in the instant matter.

5. Harleysville's complaint for declaratory relief is attached as Exhibit "B" to Harleysville's preliminary objections. The Dietz family's answer and new matter to Harleysville's complaint for declaratory relief is attached as Exhibit "4" to Harleysville's memorandum in support of its preliminary objections filed in the instant matter. Our review of the pleadings filed in the instant matter did not disclose the existence of a copy of any responsive pleading filed on behalf of the remaining defendants in the declaratory judgment action. Thus, we are unaware of what other issues, if any, have been raised in the declaratory judgment action beyond those suggested in the Dietz family's answer and new matter and Harleysville's complaint.

Brothers and the Gray family of their need for independent counsel; (7) that Harleysville did not present a vigorous defense; and (8) generally, that Harleysville failed to act in accordance with the provisions of the November 19, 1979 reservation of rights agreement.

In September of 1985, the Gray family and Gray Brothers entered into a settlement agreement and release with the Dietz family. Pursuant to the terms of the agreement, the Gray family and Gray Brothers assigned to the Dietz family and 80 percent interest in any recovery involving all actions, claims or demands that the Gray family and Gray Brothers might have against Cadmus, Elicker, and Harleysville. The agreement also contained the following provision:

"(b) Dietz and Dietz's counsel Edward Rubin, of Hamburg, Rubin, Mullin & Maxwell shall have *sole discretion* over whether to proceed with said litigation and *whether to terminate said litigation* for any reason, and shall also have *sole discretion* over the *settlement* of said litigation." (emphasis supplied).

The Gray family and Gray Brothers paid a total of $310,000 to the Dietz family pursuant to the agreement. This amount was allocated amongst compensatory damages, delay damages, and interest owing to the Dietz family, but was not allocated toward payment for punitive damages. The Gray family and Gray Brothers also agreed to cooperate fully with the Dietz family's counsel, including the provision of statements, depositions, files and ". . . thoughts research and strategies."

Counsel for the Dietz family, Edward Rubin, instituted the instant action in the name of and on behalf of the Gray family and Gray Brothers in January, 1986. Harleysville and Cadmus filed

preliminary objections to the original complaint and later to an amended complaint. Subsequently, a second amended complaint was filed which included the Dietz family as plaintiffs. The second amended complaint is the subject of the preliminary objections presently before the court.

The claims set forth by plaintiffs in the instant action may be summarized as follows. As against Cadmus, plaintiffs allege (1) that Cadmus was negligent in his representation of the Gray family as defendants in the original Chester County action; and (2) that Cadmus failed to disclose the existence of a purported conflict of interest occasioned by Cadmus' concurrent representation of the Gray family as defendants and as plaintiffs versus Commodore MOS Technologies Inc., an additional defendant joined in the Chester County action. Plaintiffs seek to recover from Cadmus compensatory and punitive damages, and damages for emotional distress.

Plaintiffs allege as follows with regard to Harleysville's conduct of the original Chester County action: (1) that Harleysville has waived its right to rely on the November 17, 1979 reservation of rights agreement; (2) that Harleysville was negligent in its conduct of the litigation and settlement negotiations; and (3) that Harleysville acted in bad faith. Plaintiffs seek to recover from Harleysville compensatory damages, punitive damages, and damages for emotional distress.

On October 7, 1986, Cadmus filed preliminary objections in the nature of a demurrer to the second amended complaint, arguing that the Gray family and Gray Brother's assignment of control over their legal malpractice claim to the Dietz family is against public policy and therefore unenforceable. Also on October 7, 1986, Harleysville filed preliminary ob-

jections raising a litany of issues,[6] including a defense founded upon the pendency of its Chester County action for declaratory relief.

Counsel for the respective parties filed extensive briefs, and oral argument was held before a court en banc on December 30, 1986.

## DISCUSSION

### Standard of Review

Initially, we recognize that the standards for sustaining preliminary objections in the nature of a demurrer are quite strict. Such objections admit as true all well-pleaded, material facts and every inference fairly deducible therefrom. *County of Allegheny v. Commonwealth,* 507 Pa. 360, 490 A.2d 402 (1985). A demurrer may be granted only in a case free from doubt, *Leach v. Hough,* 352 Pa. Super. 213, 507 A.2d 848 (1986), and may not be granted unless it is clear on the face of the pleading that the law will not permit the recovery sought. *Chartiers Valley School District v. Virginia Mansions Apartments Inc.,* 340 Pa. Super. 285, 489 A.2d 1381 (1985). If there is any doubt as to whether the preliminary objections should be granted, the doubt should be resolved in favor of overruling the demurrer. *Clevenstein v. Rizzuto,* 439 Pa. 397, 266 A.2d 623 (197); *Leach v. Hough,* supra.

With these standards in mind, we next consider the merits of the defendant's preliminary objections.

*Preliminary objections of defendants, Fred T. Cadmus III, Esq.; Cadmus, Patten and Werner; and Cadmus, Werner, Wood, and Buckwalter*

---

6. See fn 1, supra.

Cadmus argues that the assignment of total control over the conduct, settlement, and termination of a legal malpractice claim is unenforceable under Pennsylvania law and void as a matter of public policy. Therefore, Cadmus argues, the claims asserted against him in plaintiffs' second amended complaint must be dismissed inasmuch as they are founded upon the Gray family's assignment of their right to control, conduct, and terminate the litigation of their claims against Cadmus. Cadmus further argues that such a result is not precluded: (1) the fact that the members of the Dietz family have been included as plaintiffs in the instant matter; (2) the fact that the Gray family members have also appeared as plaintiffs; not by (3) the fact that the Gray family has retained a 20 percent interest in any recovery as against Cadmus and defendant law firms. We find merit in these arguments and hold that the total assignment of control over the Gray family's legal malpractice action is void and unenforceable.

Our research discloses that the appellate courts of this commonwealth have yet to be faced with the precise issue of whether a claim for legal malpractice may properly be assigned. However, Pennsylvania courts have had occasion to expound upon the nature of the legal malpractice action and its classification among traditional theories of liability and recovery. An analysis of the nature and classification of legal malpractice claims is critical to our determination of the issue posed in the instant case since our appellate courts have also expounded upon the assignability of unliquidated tort claims and claims arising out of relationships other than that of attorney and client.

Under Pennsylvania law, an individual who has an attorney-client relationship may sue under *either* a trespass or assumpsit theory. *Guy v. Leiderbach,*

501 Pa. 47, 459 A.2d 744 (1983); *Re Huffman's Estate,* 349 Pa. 59, 36 A.2d 640 (1944); see also *Moore v. McComsey,* 313 Pa. Super. 459 A.2d 841 (1983) (distinguishing legal malpractice action sounding purely in tort from action sounding in contract); 151 A.L.R. 1384; 1 Standard Pennsylvania Practice 2d §4:66. In the case sub judice, a careful examination of the allegations set forth in plaintiff's complaint reveals that plaintiffs have chosen to pursue their claims against Cadmus on a negligence theory as opposed to a contract theory. Count III of the complaint is replete with allegations and legal conclusions relating to the applicable standard of care and to particular instances of negligent conduct on the part of Cadmus and the defendant law firms. Indeed, count III of the complaint concludes with the following verbiage:

"As the result of *the negligence* of defendants . . . in their representation of the Grays individually and the failure of the defendants to properly advise, defend and employ the required skill and/or exercise the required knowledge, care and judgment ordinarily possessed, used and exercised by attorneys under like circumstances, the plaintiffs were damaged as more fully set forth in count I and bring this suit to recover the same." (emphasis supplied)

The complaint does not contain any language concerning the existence or nature of a contractual relationship between Cadmus and the plaintiffs, and does not seek damages based upon breach of contract. Moreover, we note that plaintiffs seek punitive damages based upon "outrageous" *negligent* conduct, and that they also seek damages occasioned by ". . . severe emotional distress." Such damages are clearly not recoverable in a contract action. While it may be true that the relationship between the Grays and Cadmus initially arose out of a

contract for legal services, it is abundantly clear that the claims at issue are based on professional malpractice, the gravamen of which is the negligent breach of a legal duty owned to the Gray family members. Thus, we consider the remaiing issues armed with the assumption that the claims as against Cadmus, which were assigned by the Grays to the Dietz family, are based purely in tort.

Our Supreme Court addressed the assignability of rights of action sounding in tort in *Sensenig v. Pennsylvania Railroad Co.,* 229 Pa. 168, 78 Atl. 91 (1910), where it is stated:

"A right of action *strictly personal* is not assignable and the general doctrine is, both in law and equity, that a right of action for a pure tort is not the subject of assignment. . . . Such a right does not seem to us to be a property right, capable of assignment, *prior to Liquidation.*" Id. at 172, 78 Atl. 91-92 (emphasis supplied); See also, *Sniderman v. Nerone,* 336 Pa. 305, 9 A.2d 335 (1939), affirming per curiam 136 Pa. Super. 381, 7 A.2d 496 (1939); *Marsh v. Western N.Y. & Pa. Ry. Co.,* 204 Pa. 229, 53 Atl. 100 (1903); *Hurley v. Hurley,* 342 Pa. Super. 156, 492 A.2d 439 (1985).

In *Sensenig, supra,* appellant assigned to his son all interest in a suit then pending, but not yet reduced to verdict. The suit was originally instituted by the assignor to recover statutory damages for discrimination against him in connection with the shipment of cattle by rail. Our Supreme Court, citing numerous Pennsylvania cases from the nineteenth century, concluded that the assignor's right of action was purely personal, and therefore not subject to assignment prior to liquidation. The court stated:

"Where the right to recover is given 'to the party injured' — or whether it be regarded as an action

sounding in tort, for the recovery of unliquidated damages, in either case the enforcement of the right is a personal privilege of the party aggrieved, and is not, therefore, capable of assignment." *Sensenig,* supra at 174, 78 A. at 92.

More recently, in *Hurley v. Hurley,* supra, our Superior Court held that a personal injury claim, pursued under a tort theory, remains unliquidated until such time as it is reduced to a definite amount by verdict or agreement to settle. Citing *Sensenig,* supra, *Demmery,* supra, and *Sniderman,* supra, the *Hurley* court concluded that an unliquidated claim of a personal nature was not marital property which the court could properly divide between the parties.

Based on the above, we are constrained to conclude that Pennsylvania law does not permit the assignment of tort claims which may be characterized as (1) unliquidated, and (2) purely personal in nature. The question, then, is whether this characterization applies to the Gray family's tort claim against Cadmus, which, by virtue of assignment, is now in the exclusive control of the Dietz family

Plaintiffs argue that the claims asserted against Cadmus are completely liquidated. In plaintiffs' view, the claims asserted herein are for specific sums, and represent the amount of the judgment entered against the Gray family as a result of Cadmus' negligence in the underlying Chester County action. However, an examination of count III of plaintiffs' complaint reveals that this argument is without merit. It is clear that plaintiffs' claims in the case at bar include independent claims for *punitive damages* as well as claims for *emotional distress* suffered by the Grays as a result of Cadmus' alleged legal malpractice. Neither of these claims have been reduced to a sum certain by way of verdict or agreement to settle, but instead remain to be determined

at trial. Thus, it is beyond doubt that the tort claim or right of action assigned to the Dietz family is unliquidated.

We next consider the question of whether the Gray family's tort claim against Cadmus may properly be characterized as a ". . . personal privilege of the party aggrieved . . ." *Sensenig,* supra, at 174, 78 Atl. at 92. We conclude that the Gray family's claims, based upon Cadmus' alleged legal malpractice, are indeed uniquely personal in nature.

Pennsylvania courts have long recognized that the relation of attorney and client is one based upon personal trust and confidence. *Pore v. Duke,* 303 Pa. 528, 154 Atl. 707 (1931); *Pennsylvania Power and Light,* 74 D.&C. 2d 431 (1975). The relation is so personal and confidential that an attorney may not delegate the duties and responsibilities arising from that relation to a third party. *Pore,* supra; see also *In re Follansbee's Estate,* 161 Pa. Super. 31, 53 A.2d 864 (1947). The relation is governed by the requirement that all transactions between attorney and client be subject to the highest order of integrity, fairness, and good faith. *Kribbs v. Jackson,* 387 Pa. 611, 129 A.2d 490 (1957); *Appeal of Burke,* 378 Pa. 616, 108 A.2d 58 (1954); *Lynch v. Hock,* 298 Pa. Super. 27, 444 A.2d 157 (1982). These principles are sacrosanct under our law, and, in our view, serve as the foundation of our system of justice. The relation is dependent upon the free exchange and full disclosure of the parties' innermost thoughts, secrets, fears, and strategies. In this light, we are quite unable to conceive of a professional relationship more uniquely personal and private in nature. It follows that wrongs done and injuries inflicted during the course of such a relation are truly individual in nature, and entirely personal to those aggrieved thereby.

We hold that the Gray family's claim for legal malpractice is personal in nature in addition to being unliquidated.[7] Thus, under the present state of Pennsylvania law, such a claim is not properly assignable, and the assignment of total control over the pursuit and termination of that claim is void and unenforceable.

We are not persuaded by the fact that the Gray Family has retained a 20 percent interest in any *recovery* enjoyed by plaintiffs in the instant case. Nor are we convinced that the mere appearance of both the Dietz family and the Gray family as plaintiffs renders the underlying assignment valid under our law. In our view, the fact that the Gray family has, in exchange for valuable consideration, completely *relinquished all control over the conduct, settlement and termination of this litigation* renders the assignment complete for purposes of our analysis and application of the law. In sum, it is of no moment that the Gray family may now stand by passively in hopes that their gamble will result in a share of an as yet unliquidated and undetermined claim. The fact remains that the Gray family members have divested themselves of all right to control the adjudication or settlement of their individual and personal claims against Cadmus. This our law will not condone.

Our holding today is also supported by appellate decisions rendered in several jurisdictions. For example, in the leading case of *Goodley v. Wank & Wank Inc.,* 62 Cal. App.3d 389, 133 Cal. Rptr. 83

---

7. We note with interest that the assignment in the instant matter would require, pursuant to the terms of the Dietz-Gray settlement agreement, the sharing of ". . . thoughts, research, and strategies" in addition to statements, depositions and files. See settlement agreement and release, paragraph 3(e).

(1976), the California Court of Appeals held that the gravamen of an action for legal malpractice is the negligent failure to utilize such skill, prudence, and diligence as lawyers of ordinary skill and knowledge commonly possess. Thus, the court held, such a claim gives rise to an action in tort which, in addition to being a uniquely personal nature, is founded upon a fiduciary relationship of the very highest character. Therefore, in that court's view, considerations of public policy require that actions arising out of such a relationship not be relegated to the market. 133 Cal. Rptr. at 86-87. As the Goodley court cogently reasoned:

"The commercial aspect of assignability of choses in action arising out of legal malpractice is rife with probabilities that could only debase the legal profession. The almost certain end result of merchandizing such causes of action is the lucrative business of factoring malpractice claims which would encourage unjustified lawsuits against members of the legal profession, generate an increase in legal malpractice litigation, promote champerty and force attorneys to defend themselves against strangers. The endless complications and litigious intricacies arising out of such commercial activities would place an undue burden on not only the legal profession but the already overburdened judicial system, restrict the availability of competent legal services, embarrass the attorney-client relationship and imperil the sanctity of the highly confidential and fiduciary relationship existing between attorney and client." 62 Cal. App. 3d. 389, 397, 133 Cal. Rptr. 83, 87.[8]

---

8. Indeed the ". . . endless complications and litigious intricacies" which caused concern in *Goodley* are amply suggested and promoted by the complex posture of the instant matter. For example, the trial judge and the litigants in this

Similarly, in *Christison v. Jones,* 83 Ill-App.3d 334, 39 Ill. Dec. 560, 405 N.E.2d 8 (1980) the Illinois Appellate Court, relying primarily upon *Goodley,* reasoned that the personal nature of the attorney-client relationship, coupled with the important public policy considerations surrounding that relationship, preclude the assignment of a legal malpractice claim. 39 Ill. Dec. at 563, 405 N.E.2d at 11. See also *Schroeder v. Hudgins,* 142 Ariz. 395, 690 P.2d 114 (1984); *Washington v. Fireman's Fund Ins. Co.,* 459 So. 2d. 1148 (Fla. 4th DCA 1984); *Clement v. Prestwich,* 114 Ill. 3d 479, 70 Ill. Dec. 161, 448 N.E.2d 1039 (1983); *Joos v. Drillock,* 127 Mich. App. 99, 338 N.W.2d 736 (1983); *Chaffee v. Smith,* 98 Nev. 222, 645 P.2d 966 (1982); 40 A.L.R. 4th 679. Contra, *Opel v. Empire Mutual Insurance Co.,* 517 F.Supp., 1305 (S.D. N.Y. 1981); *Collins v. Fitzwater,* 270 Or. 401, 560 P.2d 1074 (1977); *American Hemisphere Marine Agencies v. Hreit,* 40 Misc. 2d 1096, 244 N.Y.S. 2d 602 (1963).

While we are not bound by the decisions in *Goodley,* supra and its progeny, we nonetheless find the reasoning employed in those cases most persuasive and readily applicable to the situation posed in the case at bar.

For the reasons discussed above, we sustain Cadmus' preliminary objections to count III of plaintiff's complaint.

*Preliminary Objections of the Defendant, Harleysville Insurance Company.*

---

case may well be confronted with the spectre of Mr. Rubin himself testifying (on behalf of his present clients or "as-on-cross" at the behest of Cadmus) as to the nature and conduct of the settlement negotiations or strategies in the underlying action.

Harleysville argues that the pendency of its Chester County action for declaratory relief bars the plaintiffs' pursuit of the instant matter. Thus, in Harleysville's view, the equitable doctrine of lis pendens should operate to stay the Montgomery County action pending the outcome of the Chester County action. We agree.

The doctrine of lis pendens is based in common law, rather than in statute, and its application is therefore wholly subject to equitable principles. *Woods v. Peckich,* 473 Pa. 226, 373 A.2d 1345 (1977); *Rosen v. Rittenhouse Towers,* 334 Pa. Super. 124, 402 A.2d 1113 (1984); *Dorsch v. Jenkins,* 243 Pa. Super. 300, 365 A.2d 861 (1976). The general rule is that the pendency of a prior action is a valid defense when (1) the parties, (2) the causes of action, and (3) the relief sought are the same in both actions. *Hessenbruch v. Markle,* 194 Pa. 581, 45 Atl. 669 (1900); *Procacina v. Susen,* 301 Pa. Super. 392, 447 A.2d 1023 (1982); *Raw v. Lehnert,* 238 Pa. Super. 324, 357 A.2d 574 (1976); *Taylor v. Humble Oil and Refining Company,* 225 Pa. Super. 177, 311 A.2d 324 (1973); 5 Standard Pennsylvania Practice 2d §25:81. The burden of establishing the above elements is placed upon the objecting party. *Procacina,* supra; *Commonwealth ex rel. Lindsley v. Brown,* 30 Pa. Commw. 96, 372 A.2d 1258 (1977).

The application of lis pendens is purely a question of law determinable from an inspection of the records in the respective cases. *Hessenbruch,* supra; *Procacina,* supra. However, in determining whether the elements of lis pendens exist, the trial court must have before it the pleadings of record in the cases so as to ". . . compare them paragraph by paragraph." *Procacina,* 447 A.2d at 1025.

We first consider the "same parties" element. In *Hessenbruch,* supra, the progenitor of modern

Pennsylvania law as it relates to the application of lis pendens, the Supreme Court was confronted with a rather difficult factual scenario requiring the application of lis pendens. The court, in examining the "same parties" element, carefully listed the names of the parties in a Luzerne County action, which had been instituted separately and subsequent to the action actually pending before it. The court went on to rule "with perhaps some liberality of construction," 194 Pa. at 594, 45 Atl. at 671, that "although *not the same plaintiffs and defendants,* the same persons are embraced in both bills," 194 Pa. at 594, 45 Atl. at 671. Thus, under the Supreme Court's analysis, the "same parties" requirement had been satisfied despite the existence of technical differences in the rosters of the respective cases.

In his dissenting opinion in *Raw v. Lehnert,* supra, the Honorable Gwilym A. Price Jr. stated as follows with regard to the *Hessenbruch* court's analysis of the "same parties" requirement.

"It is clear that *Hessenbruch* stands for the proposition that the defense of lis pendens is not to be thwarted by technical differences between the two cases in question. The plea of lis pendens is therefore properly raised when the parties, the causes of action, and the relief sought are either *substantially,* or as the majority indicates, *precisely* the same in both actions.

*Raw v. Lehnert,* supra at 332-33, 357 A.2d at 578 (emphasis original).

In the case sub judice, we note that defendants Cadmus, Elicker, and their respective law firms are not named as defendants in the Chester County action. Thus, at first glance, it would appear that Harleysville has not met its burden with regard to the "same parties" element. However, our reading of *Hessenbruch,* supra, leads us to conclude that the

*Hessenbruch* rule is not to be mechanically and dogmatically applied so as to preclude the application of lis pendens. Rather, the application of lis pendens is subject to equitable principles, and is incidental to the power of the trial court to control the disposition of the cases on its docket. See generally *Brotherhood of Locomotive Firemen and Enginemen v. Reading Company,* 279 F. Supp. 948 (E.D. Pa. 1968) *citing Landis v. North American Co.,* 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936). Thus, we hold that the mere fact that the plaintiffs have chosen to add the defendant attorneys and their law firms as parties in the instant action does not preclude the application of lis pendens inasmuch as there exists *substantial similarity* between the rosters of the two pending actions.[9]

We next consider whether the causes of action and the relief sought are the same in both the Chester County action and the case at bar. Upon review of the relevant pleadings, we conclude that there is a similarity of issues, claims, and relief sought.

In both actions, the viability of the Dietz family and Gray Brothers claims as against Harleysville revolves around the intepretation and potential application of a provision in the insurance policy. This provision purports to exclude coverage for property

---

9. Surely, if litigants were enabled to avoid the application of lis pendens simply by adding at will a different name to the caption of a subsequent action, the doctrine would never be applied. The negative effect of such an interpretation is obvious in today's world of crowded dockets, multi-jurisdictional litigation and byzantine procedural maneuvering. Indeed, the folly inherent in a mechanical application of lis pendens is even clearer where, as at bar, the theory of liability as against the "extra" or "added" named defendant is without foundation.

damage arising out of the discharge of waste materials, unless the discharge is "sudden or accidental." Harleysville instituted the Chester County action for declaratory relief alleging that this clause, coupled with the reservation of rights agreement, forecloses all liability to the Chester County defendants (i.e. plaintiffs in the instant action). In turn, the Dietz family denied Harleysville's allegations and, importantly, went on to assert in their new matter that (1) Harleysville was *negligent* in its investigation and conduct of the original action; (2) Harleysville acted in *bad faith;* and (3) that Harleysville *failed to act in accordance with the provisions of the November 19, 1979 reservation of rights agreement.*

Essentially, for purposes of the application of lis pendens, all of the claims asserted and all of the issues raised by the respective parties in the instant action are ripe for adjudication in the Chester County action. By way of illustration, let us assume that the Chester County Court determines that the insurance policy as it is worded *does* exclude coverage. *If* the Chester County Court reaches that determination in the pending action for declaratory relief, plaintiffs in the instant case would be collaterally estopped from asserting that coverage is *not* excluded in connection with their Montgomery County action. *If* the Chester County Court determines that the Harleysville policy *does* exclude coverage, then, and in that event, the related issues of (1) whether Harleysville has waived its right to rely upon the exclusion and its reservation of rights and (2) whether Harleysville is estopped from so relying, will be before the Chester County Court by virtue of the allegations and conclusions set forth in the Dietz family's answer and new matter filed in the Chester

County action.[10]

With the above assumptions in mind, let us next assume that the Chester County Court proceeds to determine (1) that Harleysville has *not* waived its right to deny coverage, and (2) that Harleysville, through its alleged negligent and bad faith conduct of the original Chester County litigation,[11] is *not* estopped from relying upon and enforcing the exclusion and the reservation of rights agreement. Then, and in that event, the claims of negligence and bad faith (and the derivative claims of emotional distress and for punitive damages) asserted by the plaintiffs in the instant case will necessarily have been adjudicated in the pending Chester County action. In other words, *if* the Chester County Court should dispose of the claims presently before it in the manner described above, all of the claims asserted against Harleysville by plaintiff in the Montgomery County action *could be* subsumed in and foreclosed by such a disposition. Thus, we are constrained to conclude that the doctrine of lis pendens applies to the complex procedural morass presented in the instant matter. We sustain Harleysville's preliminary objection in the nature of a petition raising the pendency of a prior action, and, in accordance with the attached order, issue a stay of the Montgomery County action pending final disposition of the Chester County action.

---

10. See "Facts and Procedural History," §II, p. 8, supra.

11. See Dietz new matter, No. 84-03853, C.P. Chester County, particularly paragraphs 23-38, 30, 36-45. The words "waiver" and "estoppel" do not appear in the Dietz family's new matter. However, in our view, the claims of waiver and estoppel, which have also been asserted in the instant case, are clearly suggested by the allegations and conclusions set forth in the Dietz new matter in the Chester County action.

In so holding, it is acknowledged that we have applied the time honored equitable doctrine of lis pendens "with perhaps some liberality of construction." *Hessenbruch,* supra at 594, 45 Atl. 671. Indeed, the novelty and complexity of the matter before us demands no less. It is the opinion of this court that even our most venerated equitable and procedural tools must be constantly and carefully refined so as to keep pace with the demands of modern litigation and the creative minds of litigants and their lawyers. Our decision today reflects this court's recognition of its obligation to provide the plaintiffs herein and all litigants with a forum for the just and expeditious adjudication of their claims. However, we are likewise mindful of our related obligation to so provide in a manner consistent with principles of equity, fairness, efficiency, and judicial economy.

## CONCLUSION

Based on the foregoing reasons, we grant in part the preliminary objections of the respective defendants in accordance with the following orders.

## ORDER

Re the October 7, 1986 preliminary objections of defendants, Fred T. Cadmus III; Cadmus, Patten and Werner; and Cadmus, Werner, Wood and Buckwalter to plaintiffs' second amended complaint:

And now, this June 8, 1987, upon review of the record, and after consideration of the arguments set forth in the briefs of counsel and at oral argument on December 30, 1986, defendants, Fred T. Cadmus III; Cadmus, Patten and Werner; and Cadmus, Werner, Wood and Buckwalter's October 7, 1986

preliminary objection in the nature of a demurrer to plaintiffs' second amended complaint is sustained, without leave to amend, and judgment shall enter in favor of the aforesaid defendants and against plaintiffs.

## ORDER

Re the October 7, 1986 preliminary objection of the defendant, Harleysville Insurance Company, to the plaintiffs' second amended complaint:

And now, this June 8, 1987, upon review of the record, and after consideration of the arguments set forth in the briefs of counsel and at oral argument on December 30, 1986, defendant, Harleysville Insurance Company's October 7, 1986 preliminary objection in the nature of a petition raising the pendency of a prior action is granted.

All proceedings in the instant action are hereby stayed pending the final disposition of *Harleysville Insurance Company v. Gray Brothers Inc.*, et al., No. 84-0383, C.P. Chester County.