[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 391 
OPINION
The first amended complaint for negligence alleges "That plaintiff is the owner of the claim [legal malpractice] against defendants herein by virtue of a written assignment by Eleanor Rae Katz, dated August 7, 1972"; that defendants are attorneys at law and represented Eleanor Katz in a dissolution of marriage proceeding during the course of which they were negligent in advising her that they did not have to keep in their possession certain original insurance policies of which she was beneficiary and returned them to her, and in failing to secure a court order to restrain her husband from changing the status of said policies; that subsequently and during the pendency of the dissolution proceeding, her husband found the policies and, without her knowledge, cancelled the same and shortly thereafter died; that defendants' erroneous advice that she was protected in her property rights, was *Page 392 
the proximate cause of her loss of the proceeds from the policies; and that as a result of defendants' negligence she has been damaged in the sum of $147,000. Subsequent to the filing of their answer and extensive discovery proceedings, defendants filed motion for summary judgment. Judgment was entered for defendants and against plaintiff on the order granting the motion. Plaintiff appeals therefrom.
The motion for summary judgment was made under section 437c, Code of Civil Procedure. It was supported by declaration of defendants' counsel which generally asserted that plaintiff's cause of action is based on a written assignment of a tort claim for negligent performance of personal legal services rendered to Eleanor Katz by defendants. In his opposing declaration plaintiff asserted the right to sue under the written assignment, and relied heavily upon the facts of the underlying malpractice claim. The sole issue was whether by virtue of the assignment plaintiff has standing to bring this action for legal malpractice.[1]
On the state of the record it is clear that no factual issues were tendered by the declarations. The contention merely was that plaintiff has no standing to sue. Accordingly, we are not concerned with the sufficiency of the affidavits but with the sufficiency of the first amended complaint to state a cause of action in this plaintiff, the real issue being that the cause of action for tortious conduct by defendants, even if properly alleged and proved, cannot be asserted by him. "That question may appropriately be determined on a motion for summary judgment. (Goldstein v. Hoffman, 213 Cal.App.2d 803, 811 [29 Cal.Rptr. 334] ; Wilson v. Wilson, 54 Cal.2d 264, 269 [5 Cal.Rptr. 317,352 P.2d 725].) We are persuaded, moreover, that the motion herein presented and submitted to the court, notwithstanding its nomenclature, was nothing more than a motion for judgment on the pleadings. (See Maxon v. Security Ins. Co., 214 Cal.App.2d 603, 610 [29 Cal.Rptr. 586].) Accordingly, the motion has the purpose and effect of a general demurrer. (Colberg, Inc. v.State of California ex rel. Dept. Pub. Wks., 67 Cal.2d 408, 411-414 [62 Cal.Rptr. 401, 432 P.2d 3].) (1) When a motion is made for a judgment on the pleadings, `the only question, as on general demurrer, is one of law, and that question is simply whether the complaint states a *Page 393 
cause of action. [Citations.]' (Maxon v. Security Ins. Co.,supra, at p. 610.)" (Franklin v. Municipal Court,26 Cal.App.3d 884, 900 [103 Cal.Rptr. 354].[2]) Thus we accept as true all allegations of the first amended complaint. (Franklin
v. Municipal Court, supra, 26 Cal.App.3d 884, 900.)
(2a) If plaintiff has the right to maintain the within action said right can be based only on a written assignment. The crux of the issue is whether a cause of action for legal malpractice is assignable.[3]
(3) In 1872 our Legislature effected a change in the common law rule of nonassignability of choses in action by enacting sections 953[4] and 954,[5] Civil Code. Thus a thing in action arising out of either the violation of a right of property or an obligation or contract may be transferred (Morris v.Standard Oil Co., 200 Cal. 210, 214 [252 P. 605]; Stapp v.Madera Canal Irr. Co., 34 Cal.App. 41, 46 [166 P. 823]). The construction and application of the broad rule of assignability have developed a complex pattern of case law underlying which is the basic public policy that "`[a]ssignability of things in action is now the rule; nonassignability the exception'" (Rued
v. Cooper, 109 Cal. 682, 693 [34 P. 98]; Webb v. Pillsbury,23 Cal.2d 324, 327 [144 P.2d 1, 150 A.L.R. 504]; Jackson v.Deauville Holding Co., 219 Cal. 498, 500 [27 P.2d 643];Wikstrom v. Yolo Fliers Club, 206 Cal. 461, 464 [274 P. 959];Everts v. Will S. Fawcett Co., 24 Cal.App.2d 213, 215 [74 P.2d 815]). "`[A]nd this exception is confined to wrongs done to the person, the reputation, of the feelings of the injured party, and to contracts of a purely personal nature, like promises of marriage.'" (Rued v. Cooper, 109 Cal. 682, 693 [34 P. 98].)(4) Thus, causes of action for personal injuries arising out of a tort are not assignable[6] nor are those founded upon wrongs of a purely *Page 394 
personal nature such as to the reputation or the feelings of the one injured.[7] Assignable are choses in action arising out of an obligation or breach of contract[8] as are those arising out of the violation of a right of property (§ 954, Civ. Code) or a wrong involving injury to personal or real property.[9]
(5) "Legal malpractice consists of the failure of an attorney `to use such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake.' (Lucas v.Hamm (1961) 56 Cal.2d 583, 591 [15 Cal.Rptr. 821,364 P.2d 685].) When such failure proximately causes damage, it gives rise to an action in tort. Since in the usual case, the attorney undertakes to perform his duties pursuant to a contract with the client, the attorney's failure to exercise the requisite skill and care is also a breach of an express or implied term of that contract. . . . [¶] Malpractice in the legal field usually causes damage to intangible property interests. . . ." (Neel v.Magana, Olney, Levy, Cathcart Gelfand, 6 Cal.3d 176, 180-182 [98 Cal.Rptr. 837, *Page 395 491 P.2d 421].) (6) The elements of a cause of action for legal malpractice are set up in Budd v. Nixen, 6 Cal.3d 195 at page 200 [98 Cal.Rptr. 849, 491 P.2d 433]: "(1) the duty of the professional to use such skill, prudence and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence. [Citations.]" (2b) Plaintiff's pleading sounds in tort. He has alleged negligence in the performance of legal services rendered to his assignor by defendants in their failure to secure a restraining order to prevent a third party from interfering with the status of certain insurance policies. He does not herein seek to recover the proceeds of the policies, indeed the amount thereof is not alleged, nor plead direct injury to personal or real property or sue for breach of contract. Although the relationship between plaintiff's assignor and defendants arose out of a contract for legal services, the underlying cause herein is clearly one for malpractice the gravamen of which is the negligent breach by defendants of a duty to plaintiff's assignor. The prayer is for money damages.
Appellant argues that the claim is "for property damages arising out of the negligent performance of attorneys-at-law representing the assignor and it being a nonpersonal tort is freely assignable." Respondents' position is that the duty owed to plaintiff's assignor and allegedly breached by them is a personal one thus the tort is of a "purely personal nature," and is none the less so because the damage alleged to have been suffered by plaintiff's assignor as a direct consequence of their alleged negligence is pleaded in terms of money.
(7) Our view that a chose in action for legal malpractice is not assignable is predicated on the uniquely personal nature of legal services and the contract out of which a highly personal and confidential attorney-client relationship arises, and public policy considerations based thereon.
(8) "The relation between attorney and client is a fiduciary relation of the very highest character, and binds the attorney to most conscientious fidelity . . ." (Cox v. Delmas, 99 Cal. 104, 123 [33 P. 836]; Neel v. Magana, Olney, Levy, Cathcartand Gelfand, 6 Cal.3d 176, 189 [98 Cal.Rptr. 837,491 P.2d 421]). Thus, not only does the attorney owe the duty to use skill, prudence and diligence in the performance of the tasks he undertakes for his client (Smith v. Lewis, 13 Cal.3d 349, 356
 *Page 396 
[118 Cal.Rptr. 621, 530 P.2d 589]) but owes undivided loyalty to the interests professionally entrusted to him. Because of the inherent character of the attorney-client relationship, it has been jealously guarded and restricted to only the parties involved. For example, so personal and highly confidential is the relationship and so personal are the services performed by the attorney that his authority, in the absence of exceptional justifying circumstances, is not delegable to other counsel without the client's permission; thus, he cannot substitute another attorney in his place by assigning a contract with the client while services are still being rendered thereunder. (SeeTaylor v. Black Diamond Coal M. Co., 86 Cal. 589, 590 [25 P. 51].) Another example is the early denial in California of liability of an attorney in tort or contract to an intended beneficiary injured by a negligently drawn will (Buckley v.Gray, 110 Cal. 339 [42 P. 900]).[10] Not until Biakanja v.Irving, 49 Cal.2d 647 [320 P.2d 16, 65 A.L.R.2d 1358] andLucas v. Hamm, 56 Cal.2d 583 [15 Cal.Rptr. 821,364 P.2d 685], was the scope of the liability of an attorney enlarged by recognition of a cause of action in tort for negligence or for breach of contract in those intended beneficiaries; the Supreme Court reasoned that such extension of liability "does not place an undue burden on the profession, particularly when we take into consideration that a contrary conclusion would cause the innocent beneficiary to bear the loss." (P. 589.)
(2c) By retaining defendant-attorneys to represent her in connection with her status and personal and property rights arising out of dissolution of her marriage, there was created the professional relationship of attorney-client between defendants and plaintiff's assignor which defined the scope of reciprocal rights and duties of the parties. The attorneys' duty to their client arising out of their professional employment was a personal one running solely to her (Norton v. Hines,49 Cal.App.3d 917, 920 [123 Cal.Rptr. 237]). An attorney has but one intended beneficiary, his client (see DeLuca v. Whatley,42 Cal.App.3d 574, 576 [117 Cal.Rptr. 63] [duty to defend client accused of crime]), and no one other than plaintiff's assignor was intended to be benefitted by defendants' performance[11]
(Donald v. Garry, 19 Cal.App.3d 769, 771 *Page 397 
[97 Cal.Rptr. 191, 45 A.L.R.3d 1177]). However, the personal nature of the duty owed to the client does not perforce convert the breach thereof to a "tort of a purely personal nature" on a par with those wrongs done to the person of the injured party or his reputation or feelings which fall within the exception to the general rule of assignability; but neither does the damage alleged to be a direct consequence of defendants' negligent breach of duty convert it to a claim "for property damages" arising out of a "non-personal tort" that is freely assignable.
It is the unique quality of legal services, the personal nature of the attorney's duty to the client and the confidentiality of the attorney-client relationship that invoke public policy considerations in our conclusion that malpractice claims should not be subject to assignment. The assignment of such claims could relegate the legal malpractice action to the market place and convert it to a commodity to be exploited and transferred to economic bidders who have never had a professional relationship with the attorney and to whom the attorney has never owed a legal duty, and who have never had any prior connection with the assignor or his rights. The commercial aspect of assignability of choses in action arising out of legal malpractice is rife with probabilities that could only debase the legal profession. The almost certain end result of merchandizing such causes of action is the lucrative business of factoring malpractice claims which would encourage unjustified lawsuits against members of the legal profession, generate an increase in legal malpractice litigation, promote champerty and force attorneys to defend themselves against strangers. The endless complications and litigious intricacies arising out of such commercial activities would place an undue burden on not only the legal profession but the already overburdened judicial system, restrict the availability of competent legal services, embarrass the attorney-client relationship and imperil the sanctity of the highly confidential and fiduciary relationship existing between attorney and client.
Public policy encourages those who believe they have claims to solve their problems in a court of law and secure a judicial adjustment of their differences. The California Supreme Court has emphatically rejected the concept of self help (i.e., Daluiso
v. Boone, 71 Cal.2d 484, 492 [78 Cal.Rptr. 707, 455 P.2d 811] [policy against self help in land disputes]). However, the ever present threat of assignment and the possibility that ultimately the attorney may be confronted with the necessity of defending himself against the assignee of an irresponsible client who, because of dissatisfaction with legal services rendered and out of *Page 398 
resentment and/or for monetary gain, has discounted a purported claim for malpractice by assigning the same, would most surely result in a selective process for carefully choosing clients thereby rendering a disservice to the public and the profession.
That assignability of the legal malpractice chose in action would be contrary to sound public policy is supported by many considerations based upon the nature of the services rendered by the legal profession. An analogous situation is found in the court's early refusal to recognize a naked right of action for fraud and deceit as a marketable commodity, holding that assignment of a bare right to complain of fraud[12] is contrary to public policy (Whitney v. Kelley, 94 Cal. 146, 148 [29 P. 624]). In Sanborn v. Doe, 92 Cal. 152 [28 P. 105], the court quoted from Dickinson v. Seaver, 44 Mich. 624, 631 [7 N.W. 182]: "`The present complainant, according to his own proofs, has merely purchased claims for the purpose of this litigation, or of some litigation. He was never defrauded. It would be against every rule of equity to allow a party to buy up stale claims and then seek to establish fraud committed against his assignors. A right to complain of fraud is not assignable, . . .'" (P. 154.)
The judgment is affirmed.
Wood, P.J., and Thompson, J., concurred.
A petition for a rehearing was denied October 25, 1976.
[1] The minute order reads in part: "A review of all papers filed herein establishes there are no triable issues of material fact existing as to these parties, and Moving party is entitled to judgment as a matter of law. The action is without merit in that the cause of action is predicated on a tort (i.e., malpractice) and plaintiff is the assignee of the person who allegedly was the victim of malpractice, and causes of action for tort cannot be assigned. (Pacific Gas Electric v. Nakano,12 Cal.2d 711, 713.)"
[2] We adhere to the foregoing even though demurrer to the first amended complaint was overruled.
[3] The court in Fazio v. Hayhurst, 247 Cal.App.2d 200
[55 Cal.Rptr. 370], (overruled on other grounds in Neel v. Magana,Olney, Levy, Cathcart Gelfand, 6 Cal.3d 176, 190 [98 Cal.Rptr. 837,491 P.2d 421]) stated at page 202: "It is established in this state that a cause of action for damages arising out of an attorney's malpractice survives his death [citation]. . . ." (See also 65 A.L.R.2d 211, 216.) No authority that such cause of action may be assigned by the client has been called to our attention.
[4] "A thing in action is a right to recover money or other personal property by a judicial proceeding."
[5] "A thing in action, arising out of the violation of a right of property, or out of an obligation, may be transferred by the owner. . . ."
[6] (Fifield Manor v. Finston, 54 Cal.2d 632, 639, 642 [7 Cal.Rptr. 377, 354 P.2d 1073, 78 A.L.R.2d 813]; Washington v.Washington, 47 Cal.2d 249, 254 [302 P.2d 569]; Pacific Gas Elec. Co. v. Nakano, 12 Cal.2d 711, 713 [87 P.2d 700, 121 A.L.R. 417]; Jackson v. Deauville Holding Co., 219 Cal. 498, 500 [27 P.2d 643]; Morris v. Standard Oil Co., 200 Cal. 210
[252 P. 605]; McCafferty v. Gilbank, 249 Cal.App.2d 569, 574 [57 Cal.Rptr. 695]; Franklin v. Franklin, 67 Cal.App.2d 717, 726 [155 P.2d 637]; Auslen v. Thompson, 38 Cal.App.2d 204, 214 [101 P.2d 136]; Cassetta v. Del Frate, 116 Cal.App. 255, 257 [2 P.2d 533].)
[7] (Reichert v. General Ins. Co., 68 Cal.2d 822, 834 [69 Cal.Rptr. 321, 442 P.2d 377]; Webb v. Pillsbury, 23 Cal.2d 324, 327 [144 P.2d 1, 150 A.L.R. 504]; Jackson v. DeauvilleHolding Co., 219 Cal. 498, 500 [27 P.2d 643]; Wikstrom v.Yolo Fliers Club, 206 Cal. 461, 463 [274 P. 959]; Rued v.Cooper, 109 Cal. 682, 693 [34 P. 98]; Los Angeles Fire Police Protective League v. Rodgers, 7 Cal.App.3d 419, 425 [86 Cal.Rptr. 623]; Franklin v. Franklin, 67 Cal.App.2d 717, 726 [155 P.2d 637]; Everts v. Will S. Fawcett Co., 24 Cal.App.2d 213, 215 [74 P.2d 815].)
[8] (§ 954, Civ. Code; Reichert v. General Ins. Co.,68 Cal.2d 822, 834 [69 Cal.Rptr. 321, 442 P.2d 377]; Trubowitch v.Riverbank Canning Co., 30 Cal.2d 335, 339 [182 P.2d 182].)
[9] (Webb v. Pillsbury, 23 Cal.2d 324, 327 [144 P.2d 1, 150 A.L.R. 504] [statutory right of administrator of insolvent estate to set aside fraudulent conveyance for benefit of creditors];Jackson v. Deauville Holding Co., 219 Cal. 498, 500 [27 P.2d 643] [property (money) obtained by fraudulent representation];Morris v. Standard Oil Co., 200 Cal. 210, 214 [252 P. 605] [property injury to employer]; Lehmann v. Schmidt, 87 Cal. 15, 22 [25 P. 161] [conversion of personal property]; More v.Massini, 32 Cal. 590, 594 [trespass]; Smith v. Stuthman,79 Cal.App.2d 708, 709 [181 P.2d 123] [slander of title]; Michal
v. Adair, 66 Cal.App.2d 382, 388 [152 P.2d 490] [creditors cause of action to set aside fraudulent conveyance]; Miller v.Bank of America, 52 Cal.App.2d 512, 515 [126 P.2d 444] [conversion]; Auslen v. Thompson, 38 Cal.App.2d 204, 214 [101 P.2d 136] [fraudulent sale of corporate stock]; Staley v.McClurken, 35 Cal.App.2d 622, 625 [96 P.2d 805] [conversion of personal property]; Stapp v. Madera Canal Irr. Co.,34 Cal.App. 41, 46 [166 P. 823] [damages to realty].)
[10] Said the court in Buckley v. Gray, 110 Cal. 339 at pages 342-343 [42 P. 900]: ". . . the rule is universal that for an injury arising from mere negligence, however gross, there must exist between the party inflicting the injury and the one injured some privity by contract or otherwise, by reason of which the former owes some legal duty to the latter."
[11] This is not a case of an attorney's liability to an intended beneficiary as in Heyer v. Flaig, 70 Cal.2d 223
[74 Cal.Rptr. 225, 449 P.2d 161] and Lucas v. Hamm, 56 Cal.2d 583
[15 Cal.Rptr. 821, 364 P.2d 685].
[12] Where the form of assignment to plaintiff is sufficient to cover the property rights and claims of his assignors in and to the moneys or property so obtained by fraud and deceit, it constitutes a transfer of more than a mere naked right of action for fraud and deceit, since it includes also the right to recover the moneys or property so obtained. (Jackson v. DeauvilleHolding Co., 219 Cal. 498, 502-503 [27 P.2d 643].) *Page 399