[No. B009941. Second Dist., Div. Three. Dec. 3, 1985.]

SPINDULYS et al., Plaintiffs and Appellants, v.
LOS ANGELES OLYMPIC ORGANIZING COMMITTEE,
Defendant and Respondent.

## COUNSEL

Treiman & Schiffman and Jaak Treiman for Plaintiffs and Appellants.

Latham & Watkins and Marc W. Rappel for Defendant and Respondent.

## OPINION

**LUI, J.**—Plaintiffs Spindulys, Perkonitis and Kivikasukas are unincorporated associations consisting of individuals of Lithuanian, Latvian and Estonian ancestry, respectively; plaintiff Yanis Braukis is the director of Perkonitis. Plaintiffs appeal the trial court's grant of defendant Los Angeles Olympic Organizing Committee's (LAOOC) motion for judgment on the pleadings. Because we conclude that the trial court correctly ruled the complaint poses a political question and because such questions are nonjusticiable, we affirm.

Plaintiffs' complaint alleges a violation by LAOOC of their rights guaranteed by the Unruh Civil Rights Act.[1] The complaint alleges that the defendant conducted the business of promoting and staging the XXIIId Olympiad in the Los Angeles metropolitan area.[2] The complaint alleges that plaintiffs had an interest in their ancestral culture and performed dances in their national folk costumes. It was further alleged that Estonia, Latvia and Lithuania are recognized by the United States government but are not currently recognized by the International Olympic Committee. The acts which

---

[1]Pursuant to rule 12(a) of the California Rules of Court, we have made the original superior court file a part of the record on appeal.

The record reveals that prior to the filing of the LAOOC's answer, plaintiffs dismissed the remaining defendants as well as the second and third causes of action. Only the first cause of action remains, and it alleges a violation by LAOOC of plaintiffs' rights under the Unruh Civil Rights Act (Civ. Code, § 51 et seq.).

[2]For purposes of our review, we must accept the facts alleged in the complaint as true. (See *Goodley* v. *Wank & Wank, Inc.* (1976) 62 Cal.App.3d 389, 392-393 [133 Cal.Rptr. 83].)

are allegedly acts of discrimination by the LAOOC are set forth in paragraph 10 of the complaint as follows:

"a. Restricting participation in the ceremonies attendant to the sporting events of the 1984 Summer Olympic Games to individuals whose ancestry is from a nation approved by the International Olympic Committee.

"b. Refusing to permit plaintiffs to participate in the ceremonies attendant to the 1984 Olympic Games because of their national origins.

"c. Refusing to permit plaintiffs to participate in the ceremonies attendant to the 1984 Olympic Games because of their political beliefs.·

"d. Refusing to permit plaintiffs to participate in the ceremonies attendant to the 1984 Olympic Games because other participants and potential participants would object to plaintiffs' political beliefs that:

"1.) the annexation of the Baltic States by the Union of Soviet Socialist Republic [sic] was illegal; and

"2.) the system of government in the Union of Soviet Socialist Republics is totalitarian and violative of human rights."

The complaint continues and alleges in paragraph 11 that defendant "permitted other folk groups, numbering over 2,000 individuals, wearing their national folk costumes, to participate in the ceremonies attendant to the 1984 Olympic Games" but have denied plaintiffs such privileges on account of their "ancestry, national origins and political beliefs."

The trial court denied plaintiffs' application for a temporary restraining order and a preliminary injunction which, if granted, would have allowed them to march in the international parade staged by defendant in connection with the opening ceremonies of the XXIIId Olympiad.

Plaintiffs' complaint sought jurisdiction of the trial court to determine which countries should be allowed to participate in the opening ceremonies of the Olympics. In so doing, plaintiffs sought to represent their parents' homeland (the Baltic States) which they contend was annexed by the Union of Soviet Socialist Republics illegally. Plaintiffs sought injunctive relief which would have compelled the LAOOC and the other defendants to allow plaintiffs to participate in the Olympics as representatives of Latvia, Lithuania and Estonia. The International Olympic Committee did not recognize

those three countries and had determined that they should be represented by the Union of Soviet Socialist Republics.

■ The issue presented by plaintiffs' action is unquestionably a matter of a political nature beyond the province of our courts of law. Questions dealing with the relations between the United States and other nations have been specifically delegated to the President of the United States under article II, section 2 of the United States Constitution.

A similar situation was presented to the New York state appellate courts in connection with the 1980 Winter Olympic Games staged at Lake Placid, New York. A Taiwan national, Liang Ren-Guey, accused the Lake Placid Olympic Organizing Committee of discrimination because it refused to allow him to march in the opening ceremonies under the flag of Taiwan, a country which was not then recognized by the International Olympic Committee. The New York trial court granted Ren-Guey an injunction, but the Supreme Court, Appellate Division, Third Department, reversed the trial court's action and dismissed the complaint.

The Appellate Division's decision stated "[t]he problem of having two Chinas competing in the Olympics has confronted the IOC [International Olympic Committee] since 1960, when the IOC required athletes from the Republic of China (Taiwan) to compete under the name 'Formosa'. [Fn. omitted.] At an IOC session in April of 1979, the IOC resolved to allow both Chinas to compete in the 1980 Games. However, the resolution left to the Executive Board of the IOC determinations regarding names, flags, anthems and constitutions. After receiving notification that the United States had withdrawn diplomatic recognition of Taiwan, the Executive Board . . . adopted a resolution allowing the NOC [National Olympic Committee] from the People's Republic of China to use the nation's official flag, anthem and emblem, while changing the name of the Taiwanese NOC and requiring submission of alternatives for the flag, anthem and emblem to be used by the Taiwanese at the Games." (*Ren-Guey* v. *Lake Placid 1980 Olympic Games* (1980) 72 App.Div.2d 439 [424 N.Y.S.2d 535, 536-537].)

The Appellate Division concluded: "In our view, however, the issue is much broader since [Ren-Guey] seeks not only to express his own individual political beliefs, but also to carry a flag and wear an emblem symbolic of the country which he represents as a participant in the Games." (424 N.Y.S.2d at p. 537.)

"The President has the sole power to recognize foreign governments (*United States* v. *Pink*, 315 U.S. 203, 223, 62 S.Ct. 552, 562, 86 L.Ed.

796; *United States* v. *Belmont,* 301 U.S. 324, 330, 57 S.Ct. 758, 760, 81 L.Ed. 1134). *Whether a foreign government should be recognized is a political question that neither the United States Supreme Court nor any other American court may review* (*Oetjen* v. *Central Leather Co.,* 246 U.S. 297, 302, 304, 38 S.Ct. 309, 310, 311, 62 L.Ed. 726; *Nat'l Union Fire Ins. Co.* v. *Rep. of China,* 4 Cir., 254 F.2d 177, 186, cert. den. 358 U.S. 823, 79 S.Ct. 38, 3 L.Ed.2d 64)." (*Ibid.,* italics added.)

On further review by the Court of Appeals of the State of New York, the New York state high court affirmed the Appellate Division's disposition in a *per curiam* opinion, *Ren-Guey* v. *Lake Placid 1980 Olympic Games, Inc.* (1980) 49 N.Y.2d 771 [426 N.Y.S.2d 473, 403 N.E.2d 178].

In our view, the issue presented in *Ren-Guey* is similar in nature to the issue presented in this appeal. We see no significant distinction in the fact that *Ren-Guey* involved the flag, emblem, national anthem of Taiwan, as opposed to the national costumes of the three Baltic States involved herein; these items are all particularly unique to the nations involved. While it is true that a statement of interest was filed by the Attorney General of the United States in *Ren-Guey,* but not in this action, the absence of such a statement of interest in this case is not determinative since the subject matter in controversy is so clearly a question of politics, namely, the delicate dynamics of international and intergovernmental relations.[3]

In view of our determination that the action is nonjusticiable, we do not address the alleged violations of the Unruh Civil Rights Act.

---

[3]The record in this case contains a copy of a letter from the President of the United States to the President of the International Olympic Committee dated May 8, 1984, which states as follows:

"Dear Mr. President [Juan Antonio Samaranch]:

"I appreciated the opportunity to meet with you today and to hear from you about plans for the Games of the XXIII Olympiad in Los Angeles this summer.

"As I said during our meeting, the Los Angeles Olympic Organizing Committee has the full support of the United States Government in making preparations for the games. The United States is totally committed to upholding the Olympic Charter and fulfilling its responsibilities as the host nation of the games.

"The Olympic games should not be used for political purposes. Athletes and Olympic officials of all countries will find a warm welcome in Los Angeles and will be treated equally and without discrimination, in accord with the Olympic Charter and Olympic spirit.

"I have instructed agencies of the federal government to cooperate fully with Olympic and local officials to ensure the safety of all participants. We want to create a hospitable climate in which all participants can perform to the best of their ability.

"I consider sport to be one of the finest opportunities for people of all nations to come to know and understand each other. The International Olympic Committee deserves the support of all governments in arranging the premier sporting event for athletes of all nations. I am looking forward personally to seeing the outstanding athletes of the world marching behind their flags on July 28.

"Sincerely,
"[Signature: Ronald Reagan]."

The judgment is affirmed.

Klein, P. J., and Arabian, J., concurred.