Bohn, J.
On November 5, 1998, this matter was before the Court for a hearing on the motion for summary judgment of defendant Dianne Alves (“Alves"). Alves argues that the plaintiff, Annie Comeau (“Comeau”), will be unable to establish at trial the existence of an attorney-client relationship between them which would allow Comeau to prevail on her individual claims for legal malpractice. Alves argues further that Comeau is precluded from pursuing legal malpractice claims assigned to her by a third party.
In opposition to the motion for summary judgment, Comeau contends that there is a genuine issue of fact with regard to whether she can establish a duty owed to her by Alves, and that she is within her rights as assignee to pursue the third-party malpractice claims.
For the following reasons, summary judgment will enter in favor of Alves on Counts II, and IV of Comeau’s complaint.
BACKGROUND
The following facts are undisputed.
This legal malpractice action arises out of a real estate transaction involving a three-family home located at 61 Jackson Street in Cambridge, Massachusetts (hereinafter known as “property”). Edward and Eleanor Comerford owned the property, and lived there as owner occupants from 1964 to 1971. As long as the Comerfords remained owner occupants, their property was not subject to rent control by the City of Cambridge.
In 1971, the Comerfords moved to Lexington. The Cambridge Rent Control Board (“Board”) sent the Comerfords a notice in 1981 that the property must be registered with the Board, as their property was no longer owner-occupied.
On August 21, 1981, a real estate closing took place at the law firm of Ferraro and Walsh. Apparently to avoid registering the property with the Rent Control Board, the Comerfords sold their property to Comeau, a long term tenant at the property, for $110,000.00, and took back a so-called “wrap-around” mortgage on the property. Comeau was not represented by independent counsel at the closing. The Comerfords were represented by defendants Walsh, Schwartz (an associate in the firm), and, according to the allegations of the complaint, Alves.
In February of 1982, Edward Comerford returned to the law firm of Ferraro and Walsh with Comeau. At that time, Comeau signed trust documents for the property. Alves, an attorney with Ferraro and Walsh, notarized Comeau’s signature on the trust documents.
In or about 1988, relations between the Comerfords and Comeau broke down. The Comerfords moved back into the third floor of the building and served Comeau with notices to quit. There is a letter extant in which Alves appears to have communicated to another lawyer that she was representing the Comerfords in the course of these disputes.[2]
In 1989, Comeau hired an attorney and commenced an action in the Land Court against the Comerfords to quiet title to the property. The case was *404 eventually settled, with Comeau agreeing to a modified mortgage arrangement of $160,000,00. At the time the case was settled, the property was valued between $225,000.00 and $295,000.00. As part of the settlement, the Comerfords assigned to Comeau any and all claims they may have had against the defendants in the instant case.
Comeau then brought this legal malpractice action on her own behalf and as assignee of the Comerfords’ causes of action.
DISCUSSION
Alves asks this Court to grant summary judgment in her favor, as a matter of law, pursuant to Mass.R.Civ.P. 56. A court grants summary judgment when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983), Community National Bank v. Dawes, 369 Mass. 550, 553 (1976), Mass.R.Civ.P. 56(c). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion ...” Id.
A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving parly is unlikely to submit proof of that element at trial. Kourouvacilis v u. General Motors Corp., 410 Mass. 706, 714 (1991). “[T]he opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment." LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
Comeau’s complaint alleges five counts against Alves and other members of the law firm of Ferraro & Walsh, Alves’s previous employer. The first three counts Comeau asserts in her own name, Count I for Fraud, Count II for Legal Malpractice, and Count III for violation of G.L.c. 93A. The final two counts Comeau asserts as assignee of the Comerfords, Count IV for Legal Malpractice and Count V for violation of G.L.c. 93A. Alves’s motion for summary judgment addresses only the claims against her for legal malpractice; the motion does not address the separate fraud and 93A counts, which are grounded on different factual bases.[3]
Alves presents alternative grounds for the allowance of summary judgment in her favor on the legal malpractice claims, which shall be addressed separately here.
A. Comeau’s Legal Malpractice Claim against Alves
With regard to Comeau’s individual claim against her, Alves contends that Comeau cannot establish an attorney-client relationship between herself and Alves so as to give rise to a claim for legal malpractice. To establish a claim for legal malpractice, Comeau must prove that an attorney-client relationship existed between Alves and her. See DaRoza v. Arter, 416 Mass. 377 (1993). Comeau may establish such a relationship in two ways, by demonstrating that she maintained an express or implied relationship with Alves, or by demonstrating that she relied on Alves’s legal advice and that reliance was foreseeable. See Robertson v. Gaston Snow & Ely Bartlett, 404 Mass. 515, 524 (1989); see also Page v. Frazier, 388 Mass. 55, 62-66 (1983).
Drawing all inferences in favor of Comeau, there is a lack of any evidence that would support her claim for legal malpractice against Alves. It is incontrovertible that Comeau and Alves did not share an express or implied attorney-client relationship, and therefore, any claim for negligence must be based on Comeau’s foreseeable reliance on Alves’s services. The only contact between Alves and Comeau was Alves’s notarization of Comeau’s signature on trust documents.[4] Comeau has presented no evidence that Alves had any part in preparing these documents or encouraging Comeau to sign these documents. Comeau has presented no evidence that she “relied” on Alves’s notarization of that document, and has failed to demonstrate that such reliance would have been foreseeable.
Moreover, as an additional grounds for allowing summary judgment on Count II, this Court is of the opinion that Alves’s notarization of Comeau’s signature did not constitute the provision of legal services. The notarization could have been performed by any number of nonlawyer notary publics and accordingly should not give rise to a claim for legal malpractice.
For these reasons, Alves is entitled to summary judgment on Comeau’s individual claims against her for legal malpractice.
B. Comeau’s Claims As Assignee against Alves
Counts IV and V of Comeau’s amended complaint assert the Comerfords’ legal malpractice and 93A causes of action. Comeau contends that she was assigned the right to prosecute these claims as part of her settlement with the Comerfords of an action in the Land Court. In seeking summary judgment on Count IV alleging legal malpractice, Alves argues that the Comerfords’ legal malpractice claims are not assignable.[5] Comeau, conversely, claims that the state of the law in Massachusetts with regard to assignment of malpractice actions is unsettled, and that there is currently no prohibition against her assertion of the Comerfords’ claims.
Comeau is correct that the Massachusetts appellate courts have not decided the issue of when or if a legal malpractice claims is assignable, but that does not foreclose consideration of that issue here.[6] This Court is of the opinion that the assignment executed between the Comerfords and Comeau is void as a matter of public policy, and that Comeau is therefore *405 precluded from pursuing the Comerfords’ claims against Alves.
The Comerfords delivered to Comeau an absolute assignment of their right to pursue malpractice claims against Alves. This Court is not prepared to say that there are no circumstances under which a legal malpractice claim can be assigned, see Thornton v. Kaye, Fialkow, Richmond & Rothstein, 7 Mass. L. Rptr. 419, Lawyers Weekly No. 12-214-97 (assignment of the proceeds of a malpractice action permissible where client retained the right to prosecute the action); however, the type of assignment at issue in this case, the wholesale delegation of a personal cause of action based on the breach of a fiduciary responsibility, is the type that has been found historically to be invalid. The rationale for prohibiting assignment of legal malpractice claims is found in the highly personal and confidential relationship shared by an attorney and client. In Goodley v. Wank & Wank, Inc., 62 Cal.App.3d 389 (1976), the leading case on the nonassignability of legal malpractice claims, the court stated that
"The relation between attorney and client is a fiduciary relation of the very highest character, and binds the attorney to most conscientious fidelity Thus, not only does the attorney owe the duty to use skill, prudence and diligence in the performance of the tasks he undertakes for his client . . . but owes undivided loyalty to the interests professionally entrusted to him. Because of the inherent character of the attorney-client relationship, it has been jealously guarded and restricted to only the parties involved . . .
It is the unique quality of legal services, the personal nature of the attorney’s duty to the client and the confidentiality of the attorney-client relationship that invoke public policy considerations in our conclusion that malpractice claims should not be subject to assignment. The assignment of such claims could relegate the legal malpractice action to the market place and convert it to a commodity to be exploited and transferred to economic bidders who have never had a professional relationship with the attorney and to whom the attorney has never owed a legal duty, and who have never had any prior connection with the assignor or his rights . . . The endless complications and litigious intricacies arising out of such commercial activities would place an undue burden on not only the legal profession but the already overburdened judicial system, restrict the availability of competent legal services, embarrass the attorney-client relationship and imperil the sanctity of the highly confidential and fiduciary relationship existing between attorney and client.
Id. at 395.
Another important factor which weighs against such assignments is the detrimental effect on the attorney’s duty of confidentiality to his client. In the course of a malpractice action, an attorney is permitted to reveal any confidential client information which might be necessary for his defense. “Once a legal malpractice claim is assigned . . . the client loses control of the litigation. The assignee controls the claim and may have little or no concern for the client’s sensitivities. The client could thereby be harmed and such disclosures would foster disrespect for the attorney-client relationship in general.” Can Do, Inc. v. Manier, Herod, Hollabaugh & Smith, 922 S.W.2d 865 (Tenn. 1996).
The overwhelming majority of courts which have considered this issue have concurred with the Goodley decision in concluding that legal malpractice claims are not assignable. See i.e., Schreoder v. Hudgins, 142 Ariz. 395 (1984); Goodley v. Wank & Wank, Inc., 62 Cal.App.3d 389 (1976); Roberts v. Holland & Hart, 857 P.2d 492 (Colo. App. 1993); Continental Cas. Co. v. Pullman, Comley, Bradley & Reeves, P.C., 709 F.Sup. 44 (D.Conn. 1989) aff'd. 929 F.2d 103 (applying state law); Washington v. Fireman’s Fund Ins. Co., 459 So.2d 1148 (Fla. 1984); Christison v. Jones, 83 Ill.App.3d 334 (1980) (superceded by statute); Picadilly, Inc. v. Raikos, 582 N.E.2d 338 (Ind. 1991); Kansas Bank IV Wichita, Nat’l Assn. v. Arn, Mullins, Unruh, Kuhn & Wisson, 250 Kan. 490 (1992); Coffey v. Jefferson County Board of Education, 756 S.W.2d 155 (Ky. App. 1988); Joos v. Drillock, 127 Mich. App. 99 (1982); Wagener v. McDonald, 509 N.W.2d 188 (Minn. App. 1993); Earth Science Laboratories, Inc. v. Adkins & Wondra, 246 Neb. 798 (1994); Chaffee v. Smith, 98 Nev. 222 (1982); Aleman Servs. Corp. v. Bullock, 925 F.Sup. 252 (D.N.J. 1996) aff'd. 124 F.3d 185 (applying state law); Ammon v. McCloskey, 440 Pa. Super, 251 (1995); Can Do. Inc. v. Manier, Herod, Hollabaugh & Smith, 922 S.W.2d 865 (Tenn. 1996); Zuniga v. Groce, Locke & Hebdon 878 S.W.2d 313 (Texas 1994). But see Oppel v. Empire Mutual Ins. Co. 517 F.Sup. 1305 (E.D.N.Y. 1981) (applying state law); Collins v. Fitzwater, 277 Or. 401 (1977); (overruled on other grounds 302 Or. 62); Hedlund Mfg. Co. v. Weiser, 517 Pa. 522 (Pa. Super. 1988); Thurston v. Continental Casualty Co., 567 A.2d. 922 (Me. 1989).
A similar issue was recently considered by the First Circuit, and this Court finds that decision instructive, In One National Bank v. Antonellis, 80 F.3d 606 (1st Cir. 1996), the court examined whether a nonclient could bring an action against an attorney for negligence certification of title through assignment. The court “refuse[d] to allow a third party, of whom the attorney does not know, to assume the rights of a client through assignment.” Id. at 614. The court noted that the Massachusetts appellate courts “offer[ed] little specific guidance on this issue . . .” Id. at 613. In deciding that the assignment from the *406 former client to a third party was void, the court reviewed the history of Massachusetts law of attorney-client relationships and determined that the highly personal nature of the relationship prohibited the assignment of such a cause of action.
Based on the historical view in this Commonwealth that the relationship between attorney and client is a highly personal fiduciary one,[7] this Court is of the opinion that allowing an absolute assignment of a legal malpractice claim would violate public policy. The relationship between attorney and client would be undermined by allowing such a practice, which would “relegate the legal malpractice claim to the market place.” Goodley, 62 Cal.App.3d at 396.
For all of these reasons, Alves is entitled to summary judgment on Comeau’s claim as assignee for legal malpractice.
ORDER
For the foregoing reasons, it is ORDERED that Alves’s Motion for Summary Judgment on Counts II and IV of Comeau’s complaint be ALLOWED.

Alves disputes that she wrote the letter, that she signed the letter or that she ever represented the Comerfords.

Comeau’s fraud count alleges that Alves conspired with other members of her law firm to defraud Comeau of her property. The 93A count is grounded on the same facts. Neither of these counts is dependent on the existence of an attorney-client relationship between Alves and Comeau.
In this court’s reading of Alves’s motion for summary judgment, the only issues addressed are the existence of an attorney-client relationship and the nonassignability of legal malpractice claims. Alves does not present separate arguments for summary judgment on the fraud and 93A counts, which would require proof at trial distinct from any legal malpractice claims. In ruling that Alves is entitled to summary judgment on Counts II and IV for legal malpractice, this Court cannot perforce rule that Alves is entitled to summary judgment on the fraud and 93A claims.

As evidence of Alves’s negligence, Comeau points to Alves’s correspondence with Comeau’s legal counsel. While that correspondence may support Comeau’s fraud and 93A claims, it is illogical for Comeau to argue that letters written by Alves to legal counsel for Comeau would in any way establish an attorney-client relationship between Alves and Comeau. Conversely, that correspondence serves to negate Comeau’s claim of a fiduciary relationship as Comeau maintained independent legal counsel at the time of the correspondence. Moreover, Alves denied authorship of the letter.

Alves does not concede that the Comerfords did in fact have valid malpractice claims against her.

The issue raised by Alves, the assignability of legal malpractice claims, was considered by a Suffolk County Superior Court judge in the case of New Hampshire Insurance Company, Inc. v. McCann, et al. The judge denied a motion for summary judgment, concluding that there was no absolute prohibition against assignment of legal malpractice claims. Due to the unsettled nature of the law in this area, the Appeals Court granted leave to the defendants for an interlocutory appeal of the denial of summaryjudgment. On September 17, 1998, the Supreme Judicial Court took the matter for direct review (see SJC-7840). The matter is currently pending before the SJC, with arguments scheduled to be heard in the February session.

The attorney-client relationship is sacrosanct in Massachusetts. In Berman v. Coakley, 243 Mass. 348 (1923), the SJC stated that “[plublic policy hardly can touch matters of more general concern than the maintenance of an untarnished standard of conduct by the attorney at law toward his client." Id. at 354.