ROSBY CORPORATION,
Appellant–Plaintiff,

v.

TOWNSEND, YOSHA, CLINE & PRICE; Townsend, Yosha & Cline; Townsend, Yosha, Cline, Farrell & Ladendorf; Yosha, Ladendorf & Todd; Cline, Farrell, Christie & Lee; and Price & Barker; All Indiana Partnerships; Louis Buddy Yosha Professional Corporation, an Indiana Professional Corporation; Henry J. Price, Earl C. Townsend, Lous Buddy Yosha, Irwin J. Prince, Kevin P. Farrell, William Levy, Lance D. Cline, Mark C. Ladendorf, Lee C. Christie, and John Does I–II, Appellees–Defendants.

No. 49A05–0302–CV–68.

Court of Appeals of Indiana.

Dec. 23, 2003.

Transfer Denied April 12, 2004.

James A. Smith, Smith & Associates, Westfield, IN, Attorney for Appellant.

Robin L. Babbitt, Karl L. Mulvaney, John G. Shubat, Bingham McHale LLP, Indianapolis, IN, Attorneys for Appellees.

## OPINION

VAIDIK, Judge.

### Case Summary[1]

In this case, we are called upon to determine whether *Picadilly, Inc. v. Raikos,* 582 N.E.2d 338 (Ind.1991), bars the assignment of all legal malpractice claims or only those claims where assignment would be to an adversary in the underlying action. Because we determine that *Picadilly* bars the assignment of all legal malpractice claims in order to protect the unique nature of the client-attorney relationship, we conclude that the legal malpractice assignment in this case is void as against public policy.[2]

### Facts and Procedural History

In 1985, Monon Corporation ("Monon")—which engaged in the business of manufacturing and selling trailers—acquired rights to a patent application for a new plate trailer design ("trailer patent application"). Thereafter, several employees left Monon and formed the Wabash National Corporation ("Wabash") to compete against Monon. Among the employees who went to work for Wabash was the

---

1. Oral argument was heard in this case on November 12, 2003. We commend counsel on their preparation and advocacy.

2. We hereby deny Attorneys' Motion for Leave to File Supplemental Appendix.

designer of the new trailer. Consequently, Monon filed suit against its former employees and Wabash alleging, *inter alia*, misappropriation of trade secrets and other confidential information as well as unfair competition. Monon retained Henry Price and his law firm to represent it in the litigation.

At the time Monon filed its complaint, the trailer patent application had yet to be approved. Accordingly, Price advised Monon that it could not prevent Wabash from manufacturing trailers based on the new plate trailer design until the patent was granted. At this point, Monon authorized Price to negotiate a settlement of the case against Wabash so long as it allowed Monon to pursue a patent infringement claim once its trailer patent application was approved. Price responded that he would make sure that such a future claim was preserved in any settlement. Sometime later, Monon executed a mutual release that Price represented would permit Monon to pursue a future patent infringement claim against Wabash. Eventually, the trailer patent application was approved. Monon then filed a patent infringement claim against Wabash. However, the district court ruled that the mutual release barred Monon from seeking damages against Wabash based on any infringement of the trailer patent.

In 1992, Monon sued Price and other attorneys in his firm ("Attorneys") for legal malpractice. The trial court granted summary judgment for Attorneys, and Monon appealed. As the case moved through the appellate process, Monon filed for bankruptcy and subsequently entered into a settlement agreement with its creditors. As part of this agreement, Monon assigned to Rosby Corporation ("Rosby") the trailer patent and the right to pursue the legal malpractice action against Attorneys. Attorneys moved to dismiss the appeal, which this Court denied after "having examined these matters and being duly advised," and finding that it presented "nothing upon which this Court can grant relief...." Appellant's App. p. 140. Ultimately, this Court reversed summary judgment for Attorneys and remanded. *See Monon Corp. v. Townsend,* 678 N.E.2d 807 (Ind.Ct.App.1997), *reh'g denied, trans. denied.*

On remand, the trial court stayed proceedings. In July 2002, Monon moved to substitute Rosby as the party of interest, which the trial court approved. Thereafter, Attorneys filed a motion for judgment on the pleadings, claiming that Monon's assignment of its legal malpractice claim to Rosby was contrary to law. The trial court granted the motion, and Rosby now appeals.

### Discussion and Decision

Rosby appeals the trial court's decision granting judgment on the pleadings to Attorneys. In particular, Rosby argues Attorneys should be barred from relitigating the assignment issue under the law of the case doctrine. Rosby also argues that Monon's assignment of its legal malpractice claim to Rosby is not contrary to law.

 Indiana Trial Rule 12(C) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Like a Trial Rule 12(B)(6) motion to dismiss, a Trial Rule 12(C) motion attacks the legal sufficiency of the pleadings. *Loomis v. Ameritech Corp.,* 764 N.E.2d 658, 661 (Ind.Ct.App.2002), *reh'g denied, trans. denied.* Our review of a trial court's ruling on a Trial Rule 12(C) motion is de novo, and a motion for judgment on the pleadings will not be granted unless it is clear from the face of the complaint that under no circumstances could relief be granted. *Id.* When we consider a motion for judgment on the

pleadings, we deem the moving party to have admitted all well-pleaded facts and the untruth of her own allegations that have been denied. *Luhnow v. Horn,* 760 N.E.2d 621, 626 (Ind.Ct.App.2001). All reasonable inferences are drawn in favor of the nonmoving party and against the moving party. *Id.*

## I. Law of the Case Doctrine

■ Rosby first argues that the law of the case doctrine bars Attorneys' challenge of the assignment. In particular, Rosby contends that while the previous appeal was pending before this Court, Attorneys moved to dismiss the appeal based on the holding in *Picadilly.* A panel of this Court denied the motion after "having examined these matters and being duly advised," and found that it presented "nothing upon which this Court can grant relief...." Appellant's App. p. 140. Rosby now claims that this Court's order denying the motion is the law of the case and thereby bars Attorneys from relitigating the validity of the assignment.

■ The law of the case doctrine is a discretionary tool by which appellate courts decline to revisit legal issues already determined on appeal in the same case and on substantially similar facts. *Learman v. Auto–Owners Ins. Co.,* 769 N.E.2d 1171, 1175 (Ind.Ct.App.2002), *trans. denied.* However, to invoke the law of the case doctrine, the matters decided in the prior appeal clearly must appear to be the only possible construction of an opinion, and questions not conclusively decided in the prior appeal do not become the law

of the case. *Id.* at 1175–76. The doctrine is based upon the sound policy that once an issue is litigated and decided, that should be the end of the matter. *Montgomery v. Trisler,* 771 N.E.2d 1234, 1238 (Ind.Ct.App.2002), *trans. denied, cert. denied,* 538 U.S. 946, 123 S.Ct. 1635, 155 L.Ed.2d 487 (2003).

■ We initially note that we were not provided with a copy of Attorneys' motion to dismiss; thus, we are unable to review the nature of the claim that was made in it. Consequently, Rosby's argument fails. Nevertheless, we find that the law of the case doctrine would not bar Attorneys from litigating the issue of the legal malpractice assignment. In order for the law of the case doctrine to apply, a legal issue must have been decided on appeal, and questions not conclusively decided will not be the law of the case. Here, the issue of the assignment purportedly was raised in a motion to dismiss, and a panel of this Court simply refused to grant relief. It is unclear on the face of this Court's order whether the assignment issue was conclusively litigated and decided. Nonetheless, the application of the law of the case doctrine is discretionary, and we are free to revisit an issue previously decided. Given that the basis of the panel's decision to deny relief is unclear and there is no evidence that the issue was litigated and decided against Attorneys, we now turn to the issue of the assignment.[3]

## II. Assignment

■ Rosby argues that Monon's assignment of its legal malpractice claim to Ros-

---

**3.** Rosby also adds in a footnote that Attorneys' "failure to object to the substitution may constitute a knowing and intelligent waiver of their right to object to the substitution, especially considering the fact that Attorneys had previously briefed this very issue." Appellant's Br. p. 18, n. 5 (citing *O.K. Sand & Gravel, Inc. v. Martin Marietta Corp.,* 819 F.Supp. 771, 781 (S.D.Ind.1992)). However, because Rosby failed to develop this contention and did not present a cogent argument supported by adequate authority, we will not consider the issue. *Ind. Family & Soc. Servs. Admin. v. Hospitality House of Bedford,* 783 N.E.2d 286, 295 (Ind.Ct.App.2003).

by is not contrary to law. In particular, Rosby argues that *Picadilly* does not bar the assignment of a legal malpractice claim unless the assignment was to an adversary in the underlying action. Attorneys argue that *Picadilly* bars the assignment of all legal malpractice claims, regardless whether assigned to an adversary. The key issue on this appeal, therefore, is how far-reaching the holding in *Picadilly* is.

In *Picadilly*, Picadilly's bar ("the Bar") served a patron, who later caused an accident resulting in injuries to Charles Colvin. Colvin sued the Bar and recovered $75,000 in compensatory damages and $150,000 in punitive damages. Thereafter, the Bar filed a legal malpractice claim against their attorneys, Gustin Raikos and Dennis Thomas, alleging that the attorneys' negligence allowed the jury to hear an erroneous instruction on punitive damages. Raikos and Thomas moved for, and were granted, summary judgment. The Bar then sought protection from its creditors by filing for bankruptcy. As part of the plan for reorganization, the punitive damages award to Colvin was discharged; however, in return, Colvin was assigned the Bar's malpractice claim against Raikos and Thomas. Colvin immediately filed a motion to correct error, challenging the grant of summary judgment to the attorneys. Raikos and Thomas argued the assignment of the legal malpractice claim was invalid. The trial court denied the motion to correct error, and Colvin appealed. On appeal, another panel of this Court affirmed the trial court's grant of summary judgment. On transfer, the supreme court affirmed finding that "legal malpractice claims are not assignable." *Picadilly*, 582 N.E.2d at 339.

█ We agree with Attorneys that *Picadilly* represents a bright-line rule drawn by the supreme court holding that no legal malpractice claims may be assigned, re-gardless whether they are assigned to an adversary. In *Picadilly*, the court found:

> The assignment of such claims could relegate the legal malpractice action to the market place and convert it to a commodity to be exploited and transferred to economic bidders who have never had a professional relationship with the attorney and to whom the attorney has never owed a legal duty, and who have never had any prior connection with the assignor or his rights. The commercial aspect of assignability of choses in action arising out of legal malpractice is rife with probabilities that could only debase the legal profession. The almost certain end result of merchandizing such causes of action is the lucrative business of factoring malpractice claims which would encourage unjustified lawsuits against members of the legal profession, generate an increase in legal malpractice litigation, promote champerty and force attorneys to defend themselves against strangers. The endless complications and litigious intricacies arising out of such commercial activities would place an undue burden on not only the legal profession but the already overburdened judicial system, restrict the availability of competent legal services, embarrass the attorney-client relationship and imperil the sanctity of the highly confidential and fiduciary relationship existing between attorney and client.

*Id.* at 342 (quoting *Goodley v. Wank & Wank, Inc.*, 62 Cal.App.3d 389, 133 Cal. Rptr. 83, 87 (1976)). It is apparent that the court was concerned with the impact of assigning any legal malpractice claim, not merely assignments to an adversary. If legal malpractice claims were freely assignable, then undoubtedly a market to buy and sell such claims would emerge, ultimately leading to the treatment of such

claims as a commodity. This outcome would denigrate the unique fiduciary relationship that exists between a client and an attorney.

Moreover, the court emphasized the general applicability of its ban on assignments when it stressed "the need to preserve the sanctity of the client-lawyer relationship...." *Id.* Specifically, the court focused on two aspects of the client-attorney relationship that would be harmed if legal malpractice claims were assignable. First, the attorney's loyalty to a client would be weakened if a client could sell off a malpractice claim, making such assignments important bargaining chips in the negotiation of settlements. "A legal system that discourages loyalty to the client, disserves that client." *Id.* at 342. Second, the duty to maintain the confidences of the client would be threatened by the assignment of legal malpractice claims. *Id.* at 343. Whenever a client sues an attorney for malpractice, the attorney may utilize confidential information revealed by the client to defend against the claim, *see* Ind. Professional Conduct Rule 1.6(b)(2); however, because the client may cease the litigation at any point, the client ultimately controls the release of confidential information. This is not the case, though, when the client has assigned the claim to another party, who may reveal information the client wished to remain confidential. Although the court also discussed the implications of a role reversal where an assignment to an adversary was involved, it made no indication that its holding was limited to such facts. Contrary to Rosby's

contention, we find that *Picadilly* was not limited to cases where a legal malpractice claim is assigned to an adversary. Instead, we conclude that *Picadilly* bars the assignment of all legal malpractice claims and find void as a matter of law all such assignments.[4]

Other jurisdictions also agree that the assignment of legal malpractice claims violates public policy. Recently, in *Delaware CWC Liquidation Corp. v. Martin,* 213 W.Va. 617, 584 S.E.2d 473 (2003), the West Virginia Supreme Court had the opportunity to address this same issue. In determining that such assignments were void as against public policy, the court recognized that

> permitting the assignment of legal malpractice claims would encourage the commercialization of such claims, would lead to baseless and excessive legal malpractice claims, which would burden the legal profession, the court system and the public, and would make insolvent, underinsured, judgment-proof defendants extremely unattractive clients, thereby making it harder for them to obtain legal representation. In addition, allowing such assignments would increase the risk of collusion between the assignor and assignee.

*Id.* at 478 (citations and quotations omitted). We agree with and adopt this reasoning. *See also Goodley v. Wank & Wank, Inc.,* 62 Cal.App.3d 389, 133 Cal. Rptr. 83 (1976); *Coffey v. Jefferson County Bd. of Educ.,* 756 S.W.2d 155 (Ky.Ct. App.1988); *Can Do, Inc. v. Manier, Herod, Hollabaugh & Smith,* 922 S.W.2d 865

---

4. Rosby also argues that if we find *Picadilly* bars the assignment, then we should remand to the trial court to substitute Monon for Rosby; however, we note that Rosby failed to request such alternative relief from the trial court. "On appeal, a party may not request relief for which [it] made no claim to the trial court." *Tomahawk Village Apartments v. Far-* ren, 571 N.E.2d 1286, 1294 (Ind.Ct.App. 1991). Therefore, Rosby has waived its right to such alternative relief. Nevertheless, even if we were to remand, because Monon entered bankruptcy proceedings, the bankruptcy trustee now would be the real party in interest. *See Bradley v. Stiller,* 604 N.E.2d 1242, 1244 (Ind.Ct.App.1992), *trans. denied.*

(Tenn.1996), *cert. denied,* 519 U.S. 929, 117 S.Ct. 298, 136 L.Ed.2d 216 (1996); *Zuniga v. Groce, Locke & Hebdon,* 878 S.W.2d 313 (Tex.App.1994), *reh'g denied, writ refused.*

Rosby counters that the assignment here should not be barred because other cases have refused to extend *Picadilly* to prohibit the assignment of malpractice claims in other professional contexts. *See INS Investigations Bureau, Inc. v. Lee,* 709 N.E.2d 736, 740–43 (Ind.Ct.App.1999) (refusing to extend *Picadilly* to bar an assignment of a claim of *private investigator* malpractice), *trans. denied; First Cmty. Bank & Trust v. Kelley,* 663 N.E.2d 218, 220–24 (Ind.Ct.App.1996) (finding that *Picadilly* did not bar assignment of *accountant* malpractice claim). However, the client-attorney relationship—one of the most recognized fiduciary relationships—differs significantly from that between a client and a private investigator or accountant. In addition, Rosby cites to *Summit Account & Computer Service, Inc. v. RJH of Florida, Inc.,* 690 N.E.2d 723 (Ind.Ct.App.1998), *reh'g denied, trans. denied,* where we found that *Picadilly* did not bar a legal malpractice claim that was assigned to a successor corporation, which was a direct continuation of its predecessor. Here, there is no evidence to support that Rosby is a successor corporation to Monon. Consequently, the rule of *Summit* does not apply.

In conclusion, because *Picadilly* bars the assignment of legal malpractice claims, we find that Monon's assignment of its legal malpractice claim to Rosby is contrary to public policy.

Judgment affirmed.

BAILEY, J., and BARNES, J., concur.